CHARLES C. JENKS vs. LIVERPOOL, AND LONDON AND GLOBE INSURANCE COMPANY.

SAME vs. ORIENT INSURANCE COMPANY.

Berkshire. September 13, 1910. — October 27, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Insurance*, Fire, What is insurable interest, Insurance of equity of redemption, Statement of claim, Application. *Execution. Mortgage. Tax*, Redemption of tax title. *Devise and Legacy*, Rights of residuary legatee. *Practice, Civil*, Auditor's report. *Evidence*, Presumptions and burden of proof.

On October 15, 1904, certain land was sold at a tax sale to one J. On November 29, 1904, the owner of the land subject to the tax title mortgaged it. On August 10, 1905, all such owner's interest in the land was sold at a sale under an execution issued in an action of J. against him, in which the owner's interest had been attached on March 1, 1904, and J. was the purchaser, and on the same day J. applied for and later received a policy of insurance upon his interest in a dwelling house upon the property purchased at the sheriff's sale. On May 19, 1906, the owner mortgaged the premises to a second mortgagee, who on October 11, 1906, redeemed them from the tax sale to J., J. giving him a deed of all the interest he "acquired by" the tax collector's deed "and by reason of paying intervening taxes but conveying no other rights in and to said property, if any I have." The dwelling house was destroyed by fire on December 5, 1906. In an action by J. against the insurance company, the insurance company contended that, for certain reasons, the second mortgage was invalid, that for that reason J., by his conveyance of the tax title to the second mortgagee, conveyed to a stranger to the title and not to one entitled to redeem, who therefore as holder of a tax title more than two years old was entitled to hold against J.'s title acquired at the sale under execution, and therefore that J.'s title was of no value, and that he had no insurable interest in the house at the time of the fire. *Held*, that, whether the second mortgage was valid or not, the tax title conveyed by J. to the second mortgagee could not be set up to defeat the title acquired by J. at the execution sale, because the second mortgagee had intended to redeem from the tax title, not to buy it.

The owner of certain land with a dwelling house upon it died, leaving other property besides the land and a will which, besides certain pecuniary legacies, contained a residuary clause giving all the rest of his property to his widow, who was appointed executrix. Eleven days after the death of the testator the interest of the widow in the land was attached in an action by one J. against the widow, and, at a sale under an execution issued on a judgment for him in that action, J. was the purchaser. Thereupon J. insured the interest in the dwelling house which he thus had purchased. The dwelling house was destroyed by fire and the insurance company refused to pay the amount of the insurance, whereupon J. brought an action on the policy. At the trial, which occurred more than two years after the executrix had filed her bond, it appeared that no account of the executrix ever had been filed and that she never had filed an affidavit that she had given notice of her appointment, and in his report an auditor to

whom the case had been referred stated that "it is perhaps impossible to predicate the value, if anything, of the residuary estate. There is nothing before the court to suggest that the estate was insolvent." The defendant contended that nothing passed to the widow under the will until it was ascertained that there was a residue of the estate of the testator, and therefore that nothing passed to the plaintiff at the execution sale which gave him an insurable interest. *Held,* that the fee in the land passed to the widow on the death of the testator, subject to its being divested by the sale of it to pay debts if such a sale should become necessary and should take place in the administration of the estate, and, there having been no such sale, that the fee remained in the widow until its conveyance to the plaintiff at the execution sale.

In an action upon a policy of insurance, it appeared that the plaintiff had insured with the defendant his interest in the equity of redemption of a dwelling house, the title to which he held subject to a mortgage, that the dwelling house was totally destroyed by fire, and that it "was reasonably worth more than the amount of insurance written on it." There was no evidence as to the value of the equity of redemption. *Held,* without intimating that in any event it would have been open to the defendant to go into the question of the value of the equity of redemption, that in this case in the absence of evidence of such value the plaintiff could recover the full value of the policy, because the owner of such an equity is entitled to recover a sum equal to the amount of the physical damage done to the property insured, except where such sum is greater than the amount named in the policy, when he can recover the amount of the policy.

A policy of fire insurance required that, after damage by fire to the premises insured, the insured "forthwith" should file with the insurance company a sworn statement. In an action upon the policy to recover for a loss sustained by fire, the defendant contended that the plaintiff did not file such statement "forthwith." An auditor to whom the case had been referred, without a report of the evidence, found that the statement was "filed within such time as was demanded under the terms of the contract of insurance." The auditor's report was in evidence at the trial of the case before a judge without a jury, when it also appeared that the fire occurred on a December 5, and that the statement was filed the following January 23. The judge found for the plaintiff. *Held,* that the finding of the auditor was *prima facie* evidence that the requirement as to the filing of the statement was complied with, and that the judge was warranted in finding that the mere fact that the statement was not filed for a month and eighteen days after the fire did not overcome the finding of the auditor.

A certain policy of fire insurance required that, after a loss under the policy, the insured should render to the company a statement in writing of "the interest of the insured." A loss occurring, the insured filed a statement that at the time of the fire "the property insured belonged to [the insured] and no other person or persons except . . . ," the blank not being filled out further. The property belonged to the insured subject to two mortgages. *Held,* that the statement was not a misrepresentation, since it should not be construed to mean that there was no incumbrance upon the property.

Two ACTIONS OF CONTRACT, each to recover the amount of a policy, $1,250, issued by the defendant insuring the plaintiff against loss by fire of a dwelling house in the town of Adams. Writs dated July 10, 1907.

The cases were referred to Sanborn G. Tenney, Esquire, as auditor, to be heard together. The auditor's report stated in substance the following facts:

The land, upon which the dwelling house which was burned was situated, formerly was owned by one Buel E. Cole, who died on February 18, 1904, leaving a will which was proved on April 5, 1904, and, besides other property, three parcels of land, of nine, forty, and one hundred and twenty-five acres respectively, in Adams. Nettie E. Cole, the widow, was appointed executrix. By the residuary clause of the will, after two bequests aggregating $700, the rest of the estate was given to Nettie E. Cole.

The auditor further found that, at the time of the hearings before him, which closed on March 25, 1909, no final accounting of the estate of Buel E. Cole had been made and " it is perhaps impossible to predicate the value, if anything, of the residuary estate. There is nothing before the court [meaning, apparently, the Probate Court] to suggest that the estate was insolvent."

On October 15, 1904, the collector of taxes sold and conveyed to the plaintiff the land formerly of Buel E. Cole in Adams for non-payment of taxes.

On November 29, 1904, pursuant to a license granted by the Probate Court, the executrix mortgaged the land to one Adams, who on the same day assigned the mortgage to the plaintiff and two others, and they on the next day assigned it to the Greylock National Bank. The mortgage was to secure the payment of a note of $10,000, of which about $4,000 remained unpaid at the time of the burning of the dwelling house in question.

On August 10, 1905, all the interest which Nettie E. Cole had had in the premises in question on March 1, 1904, when the plaintiff had attached such interest in an action against her, was sold in due form at an execution sale following judgment in that action, and was conveyed to the plaintiff. On the same day an agent for the plaintiff telephoned to the local agents of the defendant that the plaintiff " had purchased Mrs. Buck's [Nettie E. Cole in the meantime had married one Buck] equity at a sheriff's sale and that he wanted to take out insurance to protect his interests." As a. result of that conversation, the policies, which are the subjects of these actions, were issued. The defendant's agents also cancelled policies, which had been issued

by the defendants for $1,000 in the name of " Nettie E. Cole, executrix for the estate of Buel E. Cole " and which were " payable in case of loss . . . to Greylock National Bank of Adams, assignee of mortgagee . . . as interest may appear." The auditor found, on the evidence before him, that neither the plaintiff nor his agent sought to influence the defendants' agents to cancel such policies, and that there was " nothing to establish the fact that this matter was ever called to the attention of the plaintiff before the trial of these cases."

On May 19, 1906, Nettie E. Cole Buck as the executrix of the will of Buel E. Cole, under a license granted to her by the Probate Court, mortgaged the premises to one George A. Buck. The report mentions a number of informalities in the proceedings on the petition for such license. The mortgage recited that it was subject to the mortgage previously described.

On October 11, 1906, the plaintiff remised, released and forever quitclaimed unto George A. Buck " all the right, title and interest which I acquired by " the tax collector's deed above described, " and by reason of paying intervening taxes but conveying no other rights in and to said property, if any I have." This instrument, the auditor found, could not be construed to give Buck " more than is stated in explicit terms, viz: that ' acquired by the tax collector's deed ' and ' no other rights.' Buck was a mortgagee and had a right to protect his interest, and Jenks was not in a position to refuse the tender of money offered by a mortgagee in redemption of a tax sale."

On December 5, 1906, the dwelling house was destroyed by fire. The auditor found that " the fire caused a total loss of said dwelling and that it was reasonably worth more than the amount of insurance written on it under the policies issued to the plaintiff."

The cases were heard by *Aiken*, C. J., without a jury, and there was other evidence besides the auditor's report. It appeared that on January 4, 1909, Nettie E. Cole Buck brought an action against each of the defendants in these actions, claiming the amount of the two $1,000 policies hereinbefore described, and contending that those policies were cancelled wrongfully, and that both of those actions still were pending.

The Chief Justice found for the plaintiff in each case in the

sum of $1,250 and interest, and reported the cases for determination by this court.

The cases were submitted on briefs.

*F. R. Shaw & H. L. Harrington,* for the plaintiff.

*J. O'Halloran,* for the defendants.

LORING, J.   The question presented by the report (as we construe it) is whether the Chief Justice was warranted in finding for the plaintiff.

By the devise to Mrs. Cole, the fee in the land here in question vested in her as of the death of her husband on February 18, 1904.   By the sheriff's deed (dated August 10, 1905) all the interest which she had on March 1, 1904 (the date of the attachment) passed to the plaintiff subject to Mrs. Cole's right of redemption.   The year in which Mrs. Cole had a right to redeem the plaintiff's title under the sheriff's sale expired on August 10, 1906, nearly four months before the date of the fire, which took place on December 5, 1906.   The plaintiff therefore was the owner of the fee at that time unless it had been extinguished by the tax title.

We cannot assent to the defendants' contention that it was so extinguished.   At the time that the plaintiff bought the land at the execution sale he was the holder of this tax title under a deed dated October 15, 1904.   If there was a merger of his rights at that time it ceased on the tax title being redeemed by Buck on October 11, 1906.   If it is a fact that the mortgage to Buck is invalid (a question upon which we express no opinion) it does not follow that he can set up the tax title as a paramount title which has matured.   Buck sought to redeem the tax title, not to buy it.   Even if he had no right to redeem he got no greater rights by redeeming than he would have had if he had had a right to redeem.

The defendants have also contended that since Mrs. Cole was a residuary devisee nothing passed to her until it was ascertained that there was a residue.   But that is not so.   The fee in land which is devised passes to the devisee subject to its being divested by a sale of it to pay debts, if a sale of it becomes necessary and takes place in the administration of the estate.   Until a sale takes place the fee is in a residuary devisee.

The plaintiff therefore at the time of the fire was the owner

of the fee subject to a first mortgage originally made to Adams (which seems to have been reduced to $4,000) and a second mortgage to Buck (the validity of which was questioned by the defendant at the argument) for $10,653.61. Both these mortgages covered other land as well as the land here in question.

It was found by the auditor that the loss caused by the fire was a total loss and that the building "was reasonably worth more than the amount of insurance written on it under the policies issued to the plaintiff."

The defendants have contended that under these circumstances the plaintiff is not entitled to the face of the policies. In support of that contention their counsel has cited cases in which it has been held in Massachusetts that a purchaser who has paid one or more instalments under a conditional agreement of purchase, (i. e. under a purchase where the title is not to pass until the whole purchase money has been paid,) can recover no more than the sum paid by her. *Tabbut* v. *American Ins. Co.* 185 Mass. 419. *Ryan* v. *Agricultural Ins. Co.* 188 Mass. 11, 13. The insurer's interest in such a case is not unlike that of a mortgagee who cannot recover more than the amount of the mortgage debt. The same conclusion was reached in *Doyle* v. *American Fire Ins. Co.* 181 Mass. 139, where insurance was effected by one who had a tenancy by the curtesy initiate in real estate owned by his wife as her separate estate.

In the case at bar there was no finding by the auditor and no evidence which required a finding by the court that the plaintiff's equity of redemption was not worth the face of the two policies. We do not mean to intimate that it would have been open to the defendant insurance company to go into this question of fact as to the value of the plaintiff's equity of redemption.

What we now decide is that in the absence of evidence as to its value the owner of an equity of redemption can recover the amount of the physical damage done to the property insured not exceeding the sum named in the policy. On that point *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40, is decisive.

The learned counsel for the defendants has argued that this cannot be so. His argument (in effect) is that if a house worth $3,000 is insured by a company, by two policies each in the sum

of $3,000, one in favor of the owner (the holder of a tax title for example) and the other in favor of a person who has a right to redeem from the owner, it cannot be that each can recover $3,000.

The questions involved in the case supposed have been the subject of much consideration in this Commonwealth and the view of the situation which has been adopted is this: Where each person in the case supposed procures insurance on his own account, the fund produced by the fire belongs to the person insured, and the other person (who had an interest in the building burned but no interest in the policy) has no rights (either in law or in equity) to the fund produced by the fire under that policy. The other person did not pay the premiums or agree to pay them, and he could not have been forced to pay them or any part of them if there had been no fire. Consequently he has no interest in the proceeds of the policy in case of a fire.

This principle was acted upon in *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 1; *Suffolk Fire Ins. Co.* v. *Boyden,* 9 Allen, 123, where it was held that (in the absence of a contract to the contrary) a mortgagee who had insured his interest in the property mortgaged had a right to the proceeds of the policy without assigning to the company his debt against the debtor. His security was impaired by the fire and he had a right to collect from the insurance company the amount of that impairment. The Massachusetts standard form of fire insurance policy now in use contains a contract to the contrary. R. L. c. 118, § 60. This principle was again acted upon in *International Trust Co.* v. *Boardman,* 149 Mass. 158, where it was held that an attaching creditor who had insured his interest and had collected the face of his policy did not have to account to the other creditors of the debtor for the proceeds of his insurance, but could keep the proceeds of his insurance and collect the whole of his debt in competition with other creditors of the debtor represented by a common law assignee.

In the case supposed the owner lost $3,000 by the building worth $3,000 being burned, unless the other person redeemed. He is entitled to $3,000, the proceeds of his policy, and the person who had the right to redeem the building cannot redeem the fund. The property which the other person had a right to redeem is less valuable by $3,000 than it was before the fire. He

is entitled to $3,000, the proceeds of his policy, and he can redeem the land or not as he sees fit.

Insurance companies can prevent double recovery in the case supposed above by electing " to rebuild or repair the premises," as they have a right to do under the Massachusetts standard policy.   If the insurance companies do that the new or repaired building becomes subject to the rights to which the building was subject before the fire.

For other cases illustrating the principle we have been discussing see *Haley* v. *Manufacturers' Fire & Marine Ins. Co.* 120 Mass. 292; *Washington Mills Emery Co.* v. *Weymouth & Braintree Ins. Co.* 135 Mass. 503.

The next defense set up is that the statements in writing were not rendered " forthwith."   The statement in writing in case of the Liverpool and London and Globe Insurance Company was rendered on December 20, 1906, and that in case of the Orient Insurance Company on January 23, 1907.   The auditor found that they were " filed within such time as was demanded under the terms of the contracts of insurance."   We do not know what facts were before the auditor on which this finding was made. The auditor's report was *prima facie* evidence on this point and the judge was warranted in finding that it was not overcome by the fact that these statements in writing were rendered when they were rendered.

The plaintiff stated in his statement in writing rendered to the Liverpool and London and Globe Insurance Company that " The property insured belonged to Charles C. Jenks and no other person or persons had any interest therein except. . . ." [This blank was not further filled out.]   The statement that the property belonged to Charles C. Jenks was true.   He was the owner subject to certain liens.   All that the insured was required to set forth in the statement in writing was " the interest of the insured " in the property burned.   We do not think that the statement should be construed to mean that there was no incumbrance on the property.   A similar point was decided in *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40, and in *Fowle* v. *Springfield Fire & Marine Ins. Co.* 122 Mass. 191.   See also in this connection *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38.   The defendants have cited 1 Clement, Fire Insurance, 210, as an

authority to the contrary. The statement in that text book is founded upon *Davis* v. *Grand Rapids Fire Ins. Co.* 36 N. Y. Supp. 792, affirmed on the opinion below in 157 N. Y. 685. In that case the plaintiff, in answer to a demand on the part of the company that the insured should state all incumbrances on the property insured, answered that " the property belonged to the assured, and no other person or persons had any interest therein." It might well be held under those circumstances that the statement was a statement that there were no incumbrances. See in this connection *Draper* v. *Charter Oak Fire Ins. Co.* 2 Allen, 569.

The entry must be                        *Judgment on the finding.*