Cameron **VESTAL** and Mabel A. Vestal, Plaintiffs,

v.

**GLENS FALLS INSURANCE COMPANY** and The American Insurance Company of Newark, New Jersey, Defendants.

Civ. No. 558.

United States District Court
E. D. North Carolina, Wilson Division.

Dec. 12, 1956.

Thorp & Thorp, Rocky Mount, N. C., for plaintiffs.

Brooks, McLendon, Brim & Holderness, Greensboro, N. C., for defendants.

GILLIAM, District Judge.

This case by consent was heard with-, out a jury. The facts found by the Court are set out herein.

A cottage at Topsail Beach, North Carolina, belonging to plaintiffs, was damaged during the October 15, 1954 hurricane designated as "Hazel". By stipulation the amount of the damage has been fixed at $14,000. The action seeks recovery of this amount under two Standard Fire Insurance policies with extended coverage in each as follows: "In consideration of the premium * * * the coverage is extended to include direct loss by windstorm * * *;" but each policy recites this exclusion: "This Company shall not be liable for loss caused directly or indirectly by tidal water, high water, whether driven by wind or not."

Under the contracts, the applicable legal principles, and the evidence, the rights of the respective parties may be stated as follows: If the damage was caused by the wind alone, without assistance of tidal or high water, the plaintiffs are entitled to the verdict and judgment; if the damage was caused by tidal or high water due or not due to wind, the verdict and judgment to that extent should go to the defendants. The Court takes judicial notice that there was plenty of both high winds and high water at Topsail Beach on that October day in 1954. The burden of proof rests on the plaintiffs and under the evidence, in my opinion, the plaintiffs should recover all or nothing.

No direct evidence was offered to establish whether it was wind or water that wrought the damage and the answer must rest upon circumstantial evidence.

It seems to me that any one, considering solely the plaintiffs' evidence, would conclude that the high wind caused the damage before there was any

high water on and over the beach at Topsail, but when the expert testimony offered by the defendants and the evidence showing the general pattern followed with respect to damage of ocean front houses as the result of this disastrous hurricane are studied a troublesome question is presented. In trying to reach a conclusion just to the parties, however, we must bear in mind the wholly unbelievable and bizarre results accomplished by winds of the hurricane and tornado varieties. My conclusion is that the damage was caused by wind and not by tidal or high water. While, as set out above, there is no direct evidence of what caused the damage, two witnesses saw the house in question just before and just after the damage. I believe these witnesses testified truthfully and in substantial accord with the facts. From their statements and the other evidence I find the underlying facts set forth below which seem to support the ultimate finding of liability.

R. B. Carney, Meteorologist,Weather Bureau, at Raleigh, North Carolina, expressed the opinion that the highest wind and the greatest gusts reached Topsail Beach a few minutes after 11:-00 a. m. and at that time, and before, the wind had attained a velocity of more than 100 miles with gusts of even greater intensity, that the blow was from the east. He also was of the opinion that the highest water reached Topsail at about 11:00 a. m. and began to recede at about 1:00 p. m. However, no eye witness so testified.

Plaintiffs' ocean front house, which was destroyed, was constructed on concrete block foundation, to which 2 x 8 sills were attached by iron bolts; upon these sills rested a frame dwelling compartment with Johns Manville siding; there was an overhang of eaves of from two feet to thirty inches; the first floor contained a garage and two unfinished rooms, a water pump, washing machine,

Corp., Lt. v. Southwestern Bell Telephone Co., 8 Cir., 100 F.2d 441, 122 A.L.R. 133; Central Union Bank of South Carolina v. New York Underwriters Ins. Co., 4 Cir., 52 F.2d 823; Breeyear v. Rockingham Farmers Mut. Fire Ins. Co., 71 N.H. 445, 52 A. 860.

and other utilities; the house stood between 50 and 100 feet from the ocean and behind the house a distance of from 50 to 100 feet ran a paved highway; during the day the sound and ocean met over the island and at the point of high water it stood at approximately 8.8 feet above beach level; if the house was standing on its foundation at that time the water (the foundation being approximately three feet) would have reached a height of above 5.8 feet in the second story; the ocean tides at the height of the hurricane were approximately 9 feet above normal predicted tides, not considering the height of the waves.

At about 10:30 a. m. on the day of the hurricane, the Vestal house was standing intact, unaffected by either wind or water, and there was no sea water around it; the wind was blowing at heavy gale and it was raining in squalls, but there was no sea water up to the Vestal lot; at about 11:30 a. m. the second story, the frame part, was found wrested from the concrete block foundation and resting on the concrete highway, about 50 feet to the west of the foundation; the floors, except in the kitchen the roof of which was off, were not wet; the clothes in the closets were dry; the beds, kitchen furniture, and a table with dishes on it, were in place; there was no sea water up to the lot and nothing to indicate that sea water had come into the house or over the lot or highway; at this time the wind was in the east and was at or near its peak.

As said above, accepting the above facts, and in the absence of anything more, one would be forced to say that the damage was wrought by wind. It is conceded that the cause was either wind or water, and all the evidence, except the opinions of the experts, shows that the high water had not reached the Vestal house and lot at the time the damage was done. I have to agree with the defendants that it does tax the credulity somewhat to believe that wind lifted the second story, which was bolted to the concrete foundation by iron bolts, carried it through the air more than fifty feet, and let it down so gently as not to disturb the orderly arrangement of the furniture; perhaps the idea is "fantastic", as one of defendants' witnesses said, but it is generally known that fantastic results follow in the wake of hurricane winds which are inherently fantastic and unpredictable. And isn't the theory of defendants even more fantastic and more difficult to accept? They insist that within the hour between the time when the house is known to have been intact and the time the damage was discovered a wave of great size and turbulance reached the house, undermined its foundation, forced the second story off the foundation and gently wafted it over fifty feet, letting it down so lightly that none of the furniture was disarranged, without leaving a sign of sea water having been either inside the house or upon or near the lot, with clothes in an open closet perfectly dry. The experts say they believe it and that the damage to the house was done by water, but I am quite certain that they are rejecting facts which I am accepting upon the testimony of two witnesses who saw the premises just before and just after the occurrence. From what they are say water did not damage the house because it had not reached the house at the time the second story was torn from the foundation and moved over to the highway.

The opinions of the experts are entitled to much weight, but these opinions, in my view, do not overcome the weight to be given to the testimony of the two witnesses as to what they actually saw on the scene and the reasonable inferences to be drawn from such testimony. Due consideration has also been accorded to defendants' evidence showing that in many places along the Carolina beaches ocean front houses in large numbers were totally destroyed, whereas the houses removed from the ocean front, which were subjected to the same wind force, suffered little or no damage. Admittedly this evidence tends to show that most of the houses were demolished or damaged by water instead of by wind, but I feel that evidence in

this case is strong enough for a finding that this particular ocean front house, though it may have been the only one, was damaged by wind before the high water reached it. I believe that the two eye witnesses for the plaintiffs spoke truthfully. This being true, I must reject the opinions of the expert witnesses, however plausible they may appear to be.

After evidence in the case was taken and considered by the Court, the Court intimated it would hold the defendants liable. Thereupon, defendants moved the Court to reopen the case and hear additional evidence. The motion was allowed and both defendants and plaintiffs were permitted to offer such additional evidence as they desired. Ironically, as I believe, both the case for the plaintiffs and the case for the defendants was strengthened. It is a close question, but I adhere to my first impression and accept the testimony of the eye witnesses, who are found to be truthful, and the reasonable inferences to be drawn therefrom, in preference to the opinions of the experts.

A judgment for the plaintiffs, with costs, and interest from October 15, 1954, will enter.