**LITITZ MUTUAL INSURANCE COM-
PANY et al., Appellants,**

v.

**Martha BARNES, Appellee.**

No. 16466.

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1957.

Rehearing Denied Oct. 31, 1957.

Jones, Circuit Judge, dissented.

**242**

———◆———

Marshall H. Fitzpatrick, Joseph S. Mead, Birmingham, Ala., for appellants.

W. W. Dinning, Hugh A. Lloyd, Demopolis, Ala., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment against the insurer in a fire insurance policy for the amount of $4,000 plus 6% interest from September 22, 1953, the date of the fire. The policy was issued on October 3, 1949, for a term of five years to October 3, 1954. To an amount not exceeding $5,000, it insured against loss by fire George H. Jay to the extent of the actual cash value at the time of loss, "nor in any event for more than the interest of the insured" in a one story frame building known as 22 North Washington Street, Demopolis, Alabama. The provisions of the policy relating to the interest of a mortgagee are copied in the margin.[1]

1. *"Mortgagee interests and obligations.* If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

"If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing."

A "Mercantile Form" attached to the policy contained on one side thereof the following:

"*Mortgagee Clause*—Loss, if any on building items, shall be payable to: (1) D. F. Jacobs, Demopolis, Alabama ............; (2) ................, as interest may appear, subject to provisions of the Mortgagee Clause appearing on the reverse side of this form."

On the reverse side of the form appeared the following:

"*Mortgagee Clause (This entire clause is void unless name of mortgagee or trustee is inserted on reverse side in space provided)*—Loss, if any on building items under this policy, shall be payable to the mortgagee (or trustee) as provided herein, as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: Provided, That in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided also, That the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard, which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void.

"This Company reserves the right to cancel this policy at any time as provided by its terms, but, in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee

On October 22, 1949, the insured Jay executed a mortgage on the property to H. A. Feibelman in the amount of $7,-000.00. The property was warranted "free of and from all encumbrances" and presumably the mortgage theretofore held by D. F. Jacobs was paid off for nothing further is heard of that mortgage. On November 8, 1949, the following endorsement was added to the policy:

"Loss Payable

"It is stipulated that any loss that may be ascertained and proven to be due the Insured under this policy shall be held payable to ........ H. A. Feibelman ........, ...... Demopolis, Alabama ...... as ...... his ............ interest may appear, subject, nevertheless, to all conditions of the policy.

"Attached to and forming part of Policy No. ....41662.... of the ........ Jefferson Mutuals ........
Name of Insurance Company issued at its .....................
Newbern, Alabama ........ Agency.
City or Town   State
Dated ....November 8,...... 1949.
/s/..Turpin Vise........ Agent.
Turpin Vise"

In March, 1952, the property was conveyed by the insured Jay to Elmer Russell Wood for a consideration which included the assumption of the Feibelman mortgage. By endorsement the name of the insured was changed from Jay to Wood. At 6:30 P.M. on September 22, 1953, the property was conveyed by Wood to W. E. Curb who assumed the Feibelman mortgage. The name of the insured had not been changed from Wood to Curb when, approximately three and one-half hours after the delivery of this deed, the property was damaged to the extent of $4,000.00 by fire of undetermined origin.

The company received due notice of the fire and demands for payment from various persons, including the appellee, but the company has made no payment under the policy to any person.

On March 11, 1955, two and one-half years after the fire, W. E. Curb conveyed the property to John C. Barnes, Jr., and his mother, Margaret Cole Barnes. The deed recites a consideration of $100.00 in cash, the assumption of the balance due on the Feibelman mortgage, and the execution of a purchase money mortgage to Curb for $6,500.00. The purchase money mortgage was duly executed by the grantees joined by the appellee, Martha Barnes, the wife of John C. Barnes, Jr. At the same time, Martha Barnes executed another instrument in which she recited that she was in the process of purchasing the Feibelman mortgage, subordinated the Feibelman mortgage to the purchase money mortgage, and released and discharged Curb from any and all liability under the Feibelman mortgage. Thereafter for a recited consideration of $4,545.09, the Feibelman mortgage was formally transferred to Martha Barnes. The co-trustees of the estate of Feibelman, then deceased, transferred to her also all of their rights and claim under the insurance policy in suit.

The facts were stipulated and the case submitted to the district court without a jury. That court entered judgment for

(or trustee) of such cancellation, and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.
"Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owners, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interests, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his, her or their claim.
"*The above Mortgagee Clause DOES NOT apply to personal property.*"

the plaintiff upon the theory that she was "entitled to the full protection of the New York Standard Mortgagee Clause." It further held that, "Insurers cannot have subrogation against property of persons who are not parties to the cause." [146 F.Supp. 494]

We do not agree with the theory of the district court. The appellee is a successor in interest to H. A. Feibelman [2] who was named in a simple loss payable clause of such importance that its pertinent part is here repeated:

"It is stipulated that any loss that may be ascertained and proven to be due the Insured under this policy shall be held payable to H. A. Feibelman, Demopolis, Alabama, as his interest may appear, subject, nevertheless, to all conditions of the policy."

■ Clearly, appellee's interest is limited to "any loss that may be ascertained and proven to be due the insured under this policy." Any such loss is payable to the appellee as her interest may appear. Appellee relies upon the words "subject, nevertheless, to all conditions of the policy", arguing that one of the conditions of the policy was the New York Standard mortgagee clause under which D. F. Jacobs had been protected at the time of the issuance of the policy. By its own terms, however, that clause was void unless Jacobs' name had been inserted, and we can find no warrant for holding that the designation of Feibelman under a simple loss payable clause had the effect of substituting him for Jacobs in the New York Stand-

ard clause. The appellee was in the position of one who was an appointee of the insured to receive the proceeds of the policy to which the insured might be entitled, to the extent of the appointee's interest.[3]

■ A few hours before the fire, the insured Wood had parted with the ownership of the property. He remained liable, however, though as between himself and Curb, secondarily liable, for the payment of the Feibelman mortgage. Appellants concede, as they must, that Wood still had an insurable interest for protection against such liability. Union Insurance Society of Canton v. Sudduth, 1925, 212 Ala. 649, 103 So. 845, 847.

The limitation in the insuring clause of the policy, "nor in any event for more than the interest of the insured," makes it necessary to determine the extent of the insurable interest remaining in Wood after he had conveyed title to the property. We are of the opinion that that interest extended to the full amount of the mortgage debt for which Wood remained liable. As between himself and the insurance company, Wood did not have to speculate on whether the mortgage debt would be paid by Curb, nor on whether it could be collected by foreclosure on the property remaining after the fire. Under the policy, he had a right to look to the insurance as a primary source of protection against his liability. Strong v. Manufacturers' Ins. Co., 10 Pick., Mass., 40, 20 Am.Dec. 507; Buck v. Phoenix Ins. Co., 1885, 76 Me. 586; Jenks v. Liverpool & London & Globe Ins. Co., 1910, 206 Mass. 591, 92 N.E.

---

2. In so holding we have not overlooked appellants' contention that the transfer of the mortgage "and all collateral pertaining thereto" by Feibelman's executors to themselves as co-trustees did not include matured rights of action not specifically assigned. See Thornton v. Strauss, 79 Ala. 164. The answer is that the right of action had not matured. The transfer was on February 20, 1953, while the loss did not occur until the following September 22.

3. 5 Appleman, Insurance Law and Practice, § 3401, pp. 554–556, 559–561; Home

Loan & Finance Co. v. Fireman's Fund Ins. Co., 1930, 221 Ala. 529, 129 So. 470; Hartford Fire Ins. Co. v. Aaron, 1933, 226 Ala. 430, 147 So. 628; Heyl v. Aetna Ins. Co., 1905, 144 Ala. 549, 38 So. 118; Longfellow v. National Fire Ins. Co., 102 Kan. 473, 170 P. 813; Green v. Fidelity-Phenix Fire Ins. Co., 1951, 233 N.C. 321, 64 S.E.2d 162; Atlas Reduction Co. v. New Zealand Ins. Co., 8 Cir., 1905, 138 F. 497; Brecht v. Law, Union & Crown Ins. Co., 9 Cir., 1908, 160 F. 399, 18 L.R.A.,N.S., 197.

998; 6 Appleman, Insurance Law and Practice, § 3868, p. 230; Couchs' Cyclopedia of Insurance Law, § 407, pp. 1180–1181; Jones, Mortgages, 4th ed., § 397, p. 301; 44 C.J.S. Insurance § 187, pp. 883–884.

We do not mean to hold that Wood could have collected the insurance without applying it to the mortgage debt. That was not attempted. What we do hold is that, under the policy, Wood was clearly entitled to protection against his liability for the mortgage debt.

■ Upon the occurrence of the fire, the contract immediately ripened into one simply for the payment of money. Union Insurance Society of Canton v. Sudduth, supra. Feibelman's interest was in the same amount as that of Wood, and under the loss payable clause, the entire loss to the extent of the mortgage debt became payable to Feibelman. Capital City Insurance Co. v. Jones, 1900, 128 Ala. 361, 30 So. 674.

■ Appellant insists, however, that, upon payment of the mortgage debt, it would have had a right to be subrogated to the mortgagee's rights of recovery, and that the appellee prejudiced those rights of subrogation when she released Curb from liability and subordinated the Feibelman mortgage to the purchase money mortgage executed by her husband and his mother to Curb. The contractual rights of subrogation contained in the policy were applicable only to a loss payable to a "designated mortgagee" under the mortgagee clause attached to the policy. The subsequent "loss payable" endorsement contained no mention of subrogation. The insurer has then no contractual right of subrogation.

■ It urges that, upon general equitable principles, if it pays Wood's debt, it should stand in Wood's shoes and have the right to pursue Wood's remedies against Curb and against the property. If Wood had breached the contract, some rights of subrogation might have accrued to his insurer, but we have been cited to no case, and we believe that none can be found, holding that an insurer which takes advantage of the defense that the fire occurred within a few hours after the insured had conveyed the property, and before, in the ordinary course of business, the name of the insured had been changed, has any right of equitable subrogation against the property or against its new owner. In our opinion, it cannot reasonably be claimed that such a result would be just and equitable. We hold, therefore, that, under the facts and circumstances of this case, the insurer never had any equitable right of subrogation.

■ Finally, the appellant urges that the district court erred in awarding interest from the date of fire. The policy contained the usual provisions as to when loss was payable, namely "sixty days after proof of loss", etc. There was no express stipulation concerning the proofs of loss or as to any specific denial of liability. Failure to furnish proofs of loss was not urged as a defense. As of the date of the trial, more than three years after the fire, it was stipulated that:

"The company received due notice of the fire.

"The policy has not been paid to any person, though demands have been made on us to pay W. E. Curb, Elmer Russell Wood, the co-trustees under the will of Harry A. Feibelman, and the plaintiff in this case, Mrs. Martha Barnes. To this point, we have made no payment to any person."

Under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., we think that it was not clearly erroneous for the district court to infer that the company had denied liability from the beginning, and had waived the requirements of the policy authorizing it to delay payment awaiting proofs of loss. St. Paul Fire & M. Ins. Co. v. Garza County W. & M. Ass'n, 5 Cir., 1937, 93 F.2d 590, 592; 46 C.J.S. Insurance § 1393, p. 698.

The judgment is therefore

Affirmed.

JONES, Circuit Judge (dissenting).

The insurance policy was for a five-year term commencing October 3, 1949. The insured was Jay. The coverage was $4,000. The policy contained an endorsement providing that any loss due the insured would be payable to Feibelman who held a mortgage on the property. On March 22, 1952, Jay conveyed to Wood who assumed payment of the mortgage debt. By endorsement Wood became the insured under the policy. By deed dated September 22, 1953, Wood conveyed the premises to Curb who assumed and agreed to pay the mortgage debt. Wood remained the insured named in the policy. Curb did not become an insured. On the same day, September 22, 1953, a fire occurred resulting in a loss exceeding the amount of the policy. On March 11, 1955, Curb gave a deed of the premises to John C. Barnes, Jr., and Margaret Cole Barnes, his mother. They assumed the indebtedness of the Feibelman mortgage. John C. Barnes, Jr., his wife Martha Barnes, the plaintiff-appellee, and Margaret Cole Barnes gave Curb a purchase money mortgage for $6,500. This mortgage recited that all three of the mortgagors were indebted to and had given their promissory notes to Curb. On the same day, March 11, 1955, Martha gave to Curb an instrument in which it was recited that she was in the process of purchasing the Feibelman mortgage and by which it was provided that she subordinated the Feibelman mortgage to the mortgage given by the Barneses to Curb and releasing Curb from liability on the Feibelman mortgage. Feibelman died. His executors, by an instrument dated February 24, 1953, reciting the direction of a decree of the Circuit Court of Marengo County, Alabama, transferred the mortgage of Jay to Feibelman, with other mortgages, to Feibelman's testamentary trustees. On April 18, 1955, the trustees of Feibelman executed a transfer of the Feibelman mortgage to Martha Barnes. It was stated that a principal balance of $4,420 was unpaid. On May 10, 1955, the trustees of Feibelman released, quitclaimed, transferred, assigned and conveyed to Martha Barnes all of their right, title, interest and claim in and to the insurance policy. If they had what they purported to assign the record does not show it.

After Wood parted with title to the insured premises he had, the majority hold, an insurable interest by reason of his liability on the mortgage debt. But as between Wood, the insured, and Curb, his grantee, the liability of the latter was primary, and that of Curb was secondary and contingent. When Martha Barnes subordinated the Feibelman mortgage to the mortgage which she, with her husband and his mother, gave to Curb, and released Curb from the obligation which he had undertaken when he purchased from Wood, Wood was also released and upon becoming released his insurable interest was gone. Martha Barnes as assignee of the Feibelman interest in the policy could have no greater rights than Wood and the Wood interest was extinguished along with the liability upon which the interest was dependent.

The majority would not hold that Wood could have collected the insurance without applying it to the mortgage debt. But they would and do hold that the proceeds become payable after the mortgage debt has, as to Wood, become extinguished.

Insurance is an agreement to indemnify against loss. Feibelman sustained no loss, Wood sustained no loss and yet Martha Barnes recovers. Regretfully and deferentially I dissent.

Rehearing denied: JONES, Circuit Judge, dissenting.