SHORES, Justice.
H.N. Henderson and his wife executed a mortgage on land on which a house stood to American National Bank (hereinafter “American National”). Later, the Hendersons agreed to sell the house to Edward R. Benefield, Jr., and Robin D. Benefield. American National required that the house be insured before it would allow the Benefields to assume the Hendersons’ mortgage. Baldwin Mutual Insurance Company, Inc. (hereinafter “Baldwin”), issued a policy providing $15,-000 coverage. Several months after the sale, the house burned. Baldwin refused to pay the claim, arguing that the contract for insurance was void because, it said, the Hendersons had not had an insurable interest in the property at the time the policy was issued.
The parties in this case do not dispute the facts. In January 1986, H.N. Henderson and his wife executed a mortgage to American National Bank to secure a loan taken to purchase a house. Three years later, the Hendersons were renting the property to the Benefields. In March 1989, the Hendersons wished to sell the property to the Benefields. The Benefields wanted to assume the Hendersons’ mortgage, but American National required that insurance on the house be obtained before it would allow the transfer to take place.
On April 3, 1989, in order to comply with American National’s demands, Henderson contracted with Baldwin for $25,000 insurance. After Baldwin inspected the premises, the amount of coverage was reduced to $15,000. American National was named the loss payee of the policy.
On March 24, 1989, the Hendersons signed the deed to the property to the Benefields at American National’s office. Even though it was understood that the transfer would not take place until insurance was obtained, the deed was recorded by an employee of American National on *575 March 27, 1989. Henderson had no knowledge of the recording.
On July 29, 1989, the house burned. Baldwin refused to pay American National the $15,000. Baldwin brought a declaratory judgment action against American National and the Hendersons, seeking a declaration that the contract was void on the grounds that the Hendersons had no insurable interest in the house as of the date of the contract. Baldwin’s allegations are based upon the fact that the deed was recorded in March, a few days before the insurance was procured in April. The trial court ruled that the contract was valid; the insurer appeals.
The issue is whether American National and the Hendersons had an insurable interest in the property at the time the insurance from Baldwin was obtained. An insurance policy will be considered void if the insured has no insurable interest. National Sec. Fire & Cas. Ins. Co. v. Brannon, 47 Ala.App. 319, 253 So.2d 777 (1971), cert. denied, 287 Ala. 737, 253 So.2d 782 (1971). Section 27-14-4, Alabama Code 1975, defines “insurable interest”:
“(b) ‘insurable interest,’ as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.”
Both American National and the Hendersons had an insurable interest in the house. American National, named as the loss payee in the insurance policy, held the mortgage on the property. The balance on the debt at the time of the fire was $25,-487.93. Alabama, being a “title theory” state, allows the mortgagee (American National) to hold legal title to the property and the mortgagor (the Hendersons, and later the Benefields) to retain the equity of redemption in the property. Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So.2d 138 (Ala.1990). American National has had legal title to the house since 1986, and was owed $25,487.93 on the debt at the time of the fire. Therefore, American had a valid insurable interest in the house.
Even though the deed was executed before the insurance policy was issued, the Hendersons continued to have an insurable interest. The Benefields had assumed the Hendersons’ mortgage, which made the Benefields primarily responsible and the Hendersons, sureties. Pacific National Fire Insurance Co. v. Watts, 266 Ala. 606, 97 So.2d 797 (1957).
Cavalier Insurance Corp. v. Hulsey, 333 So.2d 594 (Ala.Civ.App.1976), is similar to the present case. Hulsey borrowed $13,-000 from the Bank of Sulligent and gave the bank a security interest in his mobile home to secure the debt. For the bank’s benefit, Hulsey obtained insurance on the mobile home with Cavalier Insurance Company. Later, Hulsey traded in his mobile home to a dealer named Benefield, ironically, the same name as the name of the subsequent purchasers in the present case. Benefield assumed the debt, which was $2,500 at the time of sale. The mobile home burned and Cavalier refused to pay the bank, asserting that Hulsey no longer had an insurable interest in the mobile home at the time of the loss.
The Court of Civil Appeals affirmed the trial court’s holding that, despite the transfer of title to Benefield, Hulsey still “had a reasonable expectation of pecuniary benefit from the continued existence of the trailer.” The court wrote: “It was security for his liability on the note. Such liability to the bank continued even after the sale. Pacific National Fire Insurance Company v. Watts, 266 Ala. 606, 97 So.2d 797 (1957); Lititz Mutual Ins. Co. v. Barnes, 248 F.2d 241 (5th Cir.1957), cert. den., 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958).” Cavalier Insurance Corp. v. Hulsey, 333 So.2d 594, 595-96 (Ala.Civ.App.1976).
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, KENNEDY and INGRAM, JJ., concur.