FRANK A. QUEEN & another[1] vs. VERMONT MUTUAL
INSURANCE COMPANY.

No. 90-P-940.

Middlesex. December 6, 1991. - April 1, 1992.

Present: BROWN, KASS, & GILLERMAN, JJ.

*Insurance*, Fire, Interest.

The named insureds under a policy of comprehensive insurance on a house
continued to have an insurable interest in the house at the time it was
damaged by fire, although, between the date they renewed the policy
and the date of the fire, the insureds had conveyed the house to a trust
of which their son was trustee and of which they, their son, and other
family members were beneficiaries; in the circumstances, the insurer
was liable to the insureds in the amount of the policy. [345-347]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 13, 1988.

The case was heard by *Edward M. Ginsburg*, J., sitting
under statutory authority.

*Richard R. Eurich* (*Mary M. Perry* with him) for the
defendant.

*Thomas R. Holland* for the plaintiffs.

KASS, J. Between the date Frank and Bernadette Queen
(the Queens) renewed their comprehensive dwelling policy on
a house they owned in Burlington and the date that house
was damaged by fire, the Queens transferred the house to a
trust of which their son, Michael J. Queen (Michael), was
the trustee and of which family members were primary and
secondary beneficiaries. Vermont Mutual Insurance Com-
pany (Vermont), the insurer, declined to honor a claim under
the policy on the ground that the named insured, the Queens,

---

[1]Bernadette Queen.

having parted with title, no longer had an insurable interest in the property.

A judge of the Probate Court, sitting by statutory designation in the Superior Court, ruled that the Queens possessed an insurable interest in the real estate in question, the land and house at 10 Hillcrest Road, Burlington, and that Vermont was liable to the limits of its policy, $35,000. Judgment was entered accordingly, and the insurance company has appealed.

As to the pertinent facts, there is no dispute. The Queens began insuring 10 Hillcrest Road with Vermont in 1983 and renewed the policy in 1986. Michael lived in the Hillcrest Road house with his wife and son; his parents lived in Chelmsford. That the elder Queens did not live at 10 Hillcrest Road was known to Vermont. On the declaration page of Vermont's insurance policy, the property was rated as "tenant occupied." On April 1, 1987, the Queens conveyed the Hillcrest Road property to Michael Queen, trustee of Ten Hillcrest Realty Trust. By the terms of the declaration of trust (a document which strikes the reader as an off-the-rack model, rather than custom tailored), "the Trustee shall have no power to deal in or with the trust except as directed by *all* the beneficiaries" (emphasis supplied). The "Schedule of Beneficiaries" dovetails awkwardly with the unanimous action provision because the schedule states: "SCOTT QUEEN, if living, if not, MICHAEL J. QUEEN, if living, and if not, FRANK A. QUEEN and BERNADETTE QUEEN, equally, or the survivor, or if none, BERNADETTE GILET or her issue." Scott Queen is Michael's son and, hence, a grandson of Frank and Bernadette. At the time of the loss, Scott was four years old, and his ability to direct the trustee in the performance of his duties was distinctly limited. The trust document also provided that the trust could be terminated "at any time by any beneficiary hereunder over the age of thirty (30) years by notice in writing to the Trustee." If so terminated, the trust property is to be transferred "to the beneficiaries as tenants in common in proportion to their respective interests, and free of all trusts."

The fire occurred September 24, 1987. Vermont concedes that as the nature of the occupancy of the property did not change, the risk of loss for the insurer did not change. Genuineness of the loss is not contested.

To collect on an insurance policy, the person insured must have an insurable interest at the time of the insurance contract and at the time of the loss. *Clinton* v. *Norfolk Mut. Fire Ins. Co.*, 176 Mass. 486, 489 (1900). The policy underlying this requirement is that it is unwholesome to have people wagering on insurance losses. *Id.* at 488. Couch, Insurance § 24.1, at 8-11 (2d ed. 1984). Betting on the destruction of someone else's property could be a temptation to make the damaging event come true. See Couch, Insurance, *supra* at § 24.12. That the Queens had an insurable interest when they bought the Vermont policy is not in doubt; the question is whether they had an insurable interest on the day the fire occurred.

Title is not the touchstone of an insurable interest.[2] Persons have an insurable interest if they receive a benefit from that property or will suffer a loss by reason of its destruction. *Eastern R.R.* v. *Relief Fire Ins. Co.*, 98 Mass. 420, 423 (1868). *Womble* v. *Dubuque Fire & Marine Ins. Co.*, 310 Mass. 142, 144-145 (1941). Couch, Insurance, *supra* at § 24.13. The benefit must be tangible. For example, individual citizens of Boston cannot, out of civic interest and because they enjoy them, insure the bronze ducklings in the Boston Public Garden against theft, although the Friends of the Public Garden (who paid for them), if they had undertaken to pay for their replacement, could.

Beneficiaries of a trust, therefore, may purchase insurance covering the trust corpus. They have a tangible interest in preserving the assets which benefit them. See *Gordon* v. *Massachusetts Fire & Marine Ins. Co.*, 2 Pick. 249, 259 (1824); Couch, Insurance, *supra* at § 24.100. The confusing draftsmanship of the declaration of trust renders it suscepti-

---

[2]There is no provision in the insurance policy which limits the right of the insured party to alienate title to the insured assets or attaches any adverse consequences to so doing.

ble to alternative interpretations. That the body of the instru-
ment contemplates direction by "beneficiaries," i.e., the plu-
ral, suggests the several named beneficiaries own the
beneficial interest in the trust as tenants in common. Yet, the
words "if living" after each beneficiary ordinarily suggest
contingent interests, the beneficiaries to take their interests
successively, should the previously named beneficiary die.
See *Gordon* v. *Feldman*, 359 Mass. 25, 27-28 (1971).

Were we to conclude that the settlor intended the listed
beneficiaries to hold their interests in the trust in common,
there is no doubt but that each would have an insurable in-
terest, and that Vermont would be bound to pay the proceeds
of the policy. If we opt for the somewhat more plausible al-
ternative construction of the document, the result is not dif-
ferent. An interest which depends upon a contingency may
nonetheless be a tangible one; it may be attached by a credi-
tor, *Clarke* v. *Fay*, 205 Mass. 228, 235-236 (1910), and may
be assigned for the benefit of creditors, *Whiteside* v.
*Merchants Natl. Bank*, 284 Mass. 165, 174-175 (1933). See
also *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 467
(1944). Those cases consider an interest vested in a contin-
gent right if the contingency will occur should the person
with the contingent interest live long enough. The likelihood
of surviving the necessary period does not enter into the
equation. *Lucena* v. *Craufurd*, 127 Eng. Rep. 630, 652
(1805).[3] Such an interest may be insured.

Our analysis of the Queens' interest in the property com-
ports with the public policy, described above, which underlies
insisting on an insurable interest. Here, there is no wagering
contract, no element of betting on the loss of property with
which the purchasers of insurance had no identification. This
was a family enterprise for the legitimate purpose of provid-
ing a home for Michael, his wife, and son, so that they might

[3]Lord Eldon, speaking for the House of Lords in that case, illustrated
the point thus: "Suppose A. to be possessed of a ship limited to B. in case
A. dies without issue; that A. has 20 children, the eldest of whom is 20
years of age; and B. 90 years of age; it is a moral certainty that B. will
never come into possession, yet this is a clear interest."

be insulated from risks inherent in Michael's construction business. The nature of the property, how it was occupied, by whom it was occupied, the risk of the insurance company, and the entire constellation of economic interests in the property did not alter between the time the policy was purchased and the time the loss occurred. The requirement of insurable interest is "to prevent the use of insurance for illegitimate purposes. It should not be extended beyond the reasons for it by excessively technical construction." *Womble* v. *Dubuque Fire & Marine Ins. Co.*, 310 Mass. at 147. Courts do not favor the forfeiture of insurance policies "on technical grounds which bear no substantial relationship to the insurer's risk." *Redfield* v. *Continental Cas. Corp.*, 818 F.2d 596, 606 (7th Cir. 1987).

We do not think that the Queens were required to quantify their insurable interest. If they had an insurable interest, as we have held they did, Vermont was bound under its contract to pay the proceeds of its policy, which were less than the loss. See generally *Jenks* v. *Liverpool & London & Globe Ins. Co.*, 206 Mass. 591, 596-598 (1910). It might be otherwise were there other insurance policies covering the premises owned by the Queens or others with an interest in the property; but that is not the case. *Id.* at 597-598.

In a peroration to his opinion in *Lucena* v. *Craufurd*, 127 Eng. Rep. at 652, Lord Eldon said, "With respect to the conduct of the underwriters I have said nothing. Courts of justice have no right to tell men whether they are acting honestly or dishonestly. It is the duty of a court to say whether they have acted legally." As to the latter, we have stated our position about how Vermont has acted. Were we to voice an opinion about the former, Vermont would fare no better.

*Judgment affirmed.*