97 So.2d 797

## PACIFIC NATIONAL FIRE INSURANCE COMPANY

v.

### Rufus WATTS et al.

5 Div. 673.

Supreme Court of Alabama.

Aug. 22, 1957.

Rehearing Denied Nov. 14, 1957.

H. M. Brittain, Wedowee, and D. R. Boyd, Roanoke, for appellees Watts and Parker.

Lewis H. Hamner, Jr., Roanoke, for appellant.

MERRILL, Justice.

Appeal from a decree sustaining respondents' demurrers to the bill as amended and dismissing the bill. Complainant-appellant is Pacific National Fire Insurance Company and respondents are Rufus Watts, J. J. Smartt and E. B. Parker.

It is agreed by the parties that the respondents' demurrers to the original bill were sustained on the ground that the bill was without equity because no right of subrogation existed as to complainant. The bill was amended by adding paragraphs 11, 12, 13 and 14, and adding two alternatives to the prayer for relief.

We think the question to be decided remains basically the same as to the bill as amended—does the complainant, under the allegations and exhibits of the bill, show a right to be subrogated to the extent of the $1,000 it paid under its policy of insurance on the dwelling on the property which was destroyed by fire?

The original bill alleged that Rufus Watts executed a mortgage to T. C. Ussery on 88 acres of land in Chambers County to secure payment of $1,800; that Watts procured insurance on the dwelling on the property in the amount of $1,000 the policy being issued by complainant; that the loss payable clause in the policy was to Ussery as his interest might appear; that Ussery's widow, with full authority, assigned the note and mortgage to J. Horace Brown and quitclaimed the property to him; that Brown was substituted for Ussery in the loss payable clause in the policy and that the premiums on the policy were paid until the house was destroyed by fire on October 29, 1954; that in January, 1954, Watts sold 44 acres of the tract, including the house, to Carrie and Earnest Fuller; that Watts thereby divested himself of all right, title, interest and equity in and to the dwelling which was insured by complainant (a conclusion of the pleader which is incorrect as a statement of law and challenged by demurrer); that the Fullers had no interest in the policy and no liability under the policy existed as to them; that after the fire, complainant paid to Brown $1,000, the amount of the policy, and was thereupon subrogated to all the rights of Brown under the mortgage from Watts to Ussery, which had been assigned to Brown, to the extent of $1,000; that on February 9, 1955, Brown sold, conveyed and assigned to complainant all his right, title and interest in and to said note and mortgage to the extent of $1,000, reserving to himself the right to collect the balance due from Watts under the note and mortgage; and that Watts had defaulted in the payment of the note and mortgage. It was also alleged that respondent Smartt was in possession of the 44 acres sold by Watts to the Fullers, and that respondent Parker was in possession of the remaining 44 acres. The prayer of the bill sought a foreclosure of the mortgage and a declaration that the claims of respondents Smartt and Parker "be declared subordinate to and null and void as to" the rights of the complainant. The exhibits to the bill were "A", the mortgage from Watts to Ussery, "B", the policy of insurance, "C", the transfer from Mrs. Ussery to Brown, and "D", the partial assignment of Brown to complainant.

Respondents Watts and Parker filed pleas in abatement on the ground that the lands were located in Chambers County but the suit was filed in Randolph County. These pleas were overruled on the basis that the suit was primarily one to foreclose a mortgage, and that the mortgagor Watts was a material defendant, and since he resided in Randolph County, the suit was properly brought in that County. Tit. 7, § 294, Code 1940.

As previously stated, the demurrers to the original bill were sustained and the complaint was amended. In the amending paragraphs it was alleged that subsequent to his assignment to complainant, Brown transferred the balance of the debt owed by Watts to him to Parker, and a copy of that instrument was made Exhibit "E"; that thereafter, the mortgagor Watts executed a warranty deed to Parker as to the entire 88 acres of land, reciting therein that the

same was in lieu of the foreclosure of the mortgage and in payment of the balance due on the mortgage, and a copy of that deed was made Exhibit "F"; that later, in August, 1955, Parker conveyed the same 44 acres which Watts had sold to the Fullers to respondent Smartt.

Complainant amended its prayer in the alternative asking first, that an equitable trust in favor of complainant be impressed upon the 44 acres remaining in Parker's hands after his sale of the other 44 to Smartt and second, that complainant be permitted to redeem the entire 88 acres and that thereafter, the mortgage be foreclosed and the entire tract be sold to satisfy the indebtedness due complainant.

The three assignments of error complain of the action of the lower court in sustaining the demurrers to the bill as amended and dismissing the bill.

The rules as to subrogation in circumstances like those presented here are set out in a case cited and relied upon by both parties, Tarrant Land Co. v. Palmetto Fire Ins. Co., 220 Ala. 428, 125 So. 807, 809, where this court said:

"The right of subrogation has been the subject of many decisions and text-writers, and we feel that the principles of law which control the case are in the main settled as follows: When the policy, both by its face and by the intention of the parties, insures the mortgagor for his own benefit and at his own expense, no contract otherwise appearing, payment of the insurance money to the mortgagee goes to the benefit of the mortgagor in satisfaction pro tanto of the mortgage debt, and the insurer is not entitled to subrogation. 26 C.J. 461; Hackett v. Cash, 196 Ala. 403, 72 So. 52; annotations in 52 A.L.R. 278; 7 Cooley's Briefs on Ins. (2d Ed.) 6720.

"Where the interest of the mortgagee is separately insured for his own benefit and at his own expense, and a loss occurs before payment of the mortgage, the insurer in paying the mortgagee is entitled to an assignment as a subrogee, and may enforce the mortgage against the mortgagor. 7 Cooley's Briefs on Ins. (2d Ed.) p. 6716; 26 C.J. 461.

"But in the former instance though the mortgagor procures the insurance for his benefit and pays the expense, the insurer upon payment of the loss to the mortgagee is entitled to subrogation, if the mortgage clause provides that the insurance shall be valid and binding for the benefit of the mortgagee only, if by reason of a breach of some term of the policy it has been forfeited as to the mortgagor, and also contains a stipulation looking to an assignment to the insurer of the whole or a part of the securities held by the mortgagee. 7 Cooley's Briefs on Ins. (2d Ed.) 6717, 6718; Hackett v. Cash, supra; annotations in 52 A.L.R. 278-280."

The bill alleges that Watts procured the issuance of the policy of insurance and the policy, Exhibit "B", shows on its face that "Rufus Watts and legal representatives" were insured and that the name of the insured was Rufus Watts. Further allegations and exhibits show that the $1,000 insurance paid by complainant went to the benefit of Watts in satisfaction pro tanto of the mortgage debt. Thus, under the rule of the Tarrant Land Co. case in the first quoted paragraph supra, complainant is not entitled to subrogation. Nor is its position changed by the allegation that Watts sold his interest to the Fullers. Any conveyance Watts might attempt to make was subject to his mortgage which was held by Brown. Brown was looking to Watts for payment, or in case of default, to the property. Watts was still liable to Brown as mortgagor. When the house burned, Watts was entitled to credit on his mortgage debt to the amount that the complainant paid to Brown, i. e. $1,000, and the exhibits indicate that Watts received such credit. The conveyance by Watts to the Fullers did not divest Watts of all his in-

terest in the property thereby leaving him with no insurable interest in the dwelling as alleged in the bill.· We note in passing that it is rather incongruous to justify the filing of the suit in Randolph County, the residence of the mortgagor Watts, the material defendant, and then to insist that he had parted with all interest in the land and the insurance policy prior to the loss of the dwelling house by fire.

Complainant is not aided by the subrogation clause in the insurance policy which reads, in part:

"Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owners, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, * * *"

As between complainant and the mortgagee Brown, the complainant may claim that it is not liable to the mortgagor and take an assignment as it did, but such an assignment cannot alter the mortgagor's rights adversely. Certainly, Brown was not entitled to receive the $1,000 insurance and then recover the entire secured debt without giving Watts credit for the $1,000. If Brown could not be so unjustly enriched, then his assignee, complainant, has no greater right than Brown.

Furthermore, the assignment from Brown to complainant was limited and qualified. Complainant acquired no interest in the balance due; it received such interest as Brown had in the mortgage and the indebtedness secured thereby to the extent of $1,000, which sum was what complainant had agreed to pay Watts and Brown if the house on the property should be destroyed by fire. The insurance policy was in full effect with premiums paid; complainant paid the $1,000 to Brown as it was obligated to do because Brown's interest was more than $1,000. Watts received credit· on his debt for $1,000, and it is difficult to see just what interest complainant received under the assignment from Brown insofar as Watts is concerned, since for aught that appears, the assignment from Brown to complainant was without any notice, actual or constructive, to Watts.

Complainant counters with the insistence that Watts had no insurable interest at the time of the fire. But we have held that one can have an insurable interest although he has no property in the thing insured, but any limited or qualified interest, equitable right or expectancy of advantage is sufficient to support an insurable interest. Or, to state it differently, whatever furnishes a reasonable expectation of pecuniary benefit from the existence of the subject of insurance is a valid insurable interest. North British & Mercantile Ins. Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764, 27 A.L.R.2d 1047; American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 225 Ala. 208, 142 So. 37, and cases cited therein. Certainly, Watts' interest in the policy of insurance is positively described in the holdings of the two last cited cases. Irrespective of the state of Watts' title to the property, he had a reasonable expectation of pecuniary benefit from the existence of the subject of insurance because he was still liable on the note and mortgage. In 44 C.J.S. Insurance § 187 a, p. 884, it is expressed thusly:

"* * * A mortgagor retains an insurable interest in the mortgaged property even though he disposes of his equity of redemption absolutely, as long as he is personally liable for the payment of the mortgage debt, since by his disposing of the property subject to the mortgage it becomes the primary fund for the payment of the mortgage debt, and the loss of the property would therefore be a direct loss to the mortgagor."

We think the court correctly held that there was no right of subrogation as

to complainant and that the bill as amended did not contain equity.

There is one allegation in the bill which, if considered alone, would give equity to the bill. We purposely omitted it in our statement of the allegations of the bill. This allegation is in paragraph 3 of the bill and is an alternative allegation to that one, also in paragraph 3, "that the said Rufus Watts procured the issuance of said policy of insurance aforesaid which is marked Exhibit "B" and made a part hereof." The allegation is that "T. C. Ussery procured at his own expense and for his own benefit, as mortgagee, a policy of fire insurance from your complainant in the amount of $1,000 * * * and paid the premiums thereon * * *." The sole purpose of this allegation is to give equity to the bill under the second quoted paragraph from Tarrant Land Co. v. Palmetto Fire Ins. Co., supra.

The trial court took note of this allegation as do we and disregarded it. This action was correct.

Exhibits are parts of bills. Equity Rule 11, Code 1940, Tit. 7 Appendix. The verity of exhibits to a bill is taken as true on demurrer. Rochell v. Oates, 241 Ala. 372, 2 So.2d 749. When the averments of a bill are contradictory of the exhibits thereto, recitals in the exhibits take precedence and control. Wright v. Saddler, 255 Ala. 101, 50 So.2d 235; Lunsford v. Marx, 214 Ala. 37, 106 So. 336. A bill in the alternative must show equity in either alternative. Cox v. Parker, 212 Ala. 35, 101 So. 657; Hays v. McCarty, 239 Ala. 400, 195 So. 241.

The allegation that Ussery procured the insurance for his own benefit is repugnant to the allegation that Watts procured the policy, and the exhibits make it clear that Watts did procure the policy. Thus, the allegation that Ussery procured it for his own benefit is a conclusion of the pleader, contradicted by the other allegations of the bill, and cannot be held to give equity to the bill. Robinson v. Williams, 229 Ala. 692, 159 So. 239.

We hold that the bill as amended fails to show complainant's right of subrogation, and that the additional allegations of paragraphs 11–14 do not give equity to it; and it does not appear that an allegation, consistent with the exhibits, can be made to give it equity. The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN and COLEMAN, JJ., concur.