No. 46,434

E. R. Pattison and Arlie W. Pattison, *Appellees*, v. State Farm Fire & Casualty Company, a corporation, and Capitol Federal Savings & Loan Association, a Corporation, *Appellants.*

(495 P. 2d 975)

Opinion filed April 8, 1972.

*William Hergenreter*, of Shaw, Hergenreter & Quarnstrom, of Topeka, argued the cause, and was on the brief for appellant Capitol Federal Savings & Loan Association. *Brock Snyder*, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Peter F. Caldwell*, of the same firm was with him on the brief for appellant State Farm Fire & Casualty Company.

*Floyd E. Gehrt*, of Gehrt & Roberts, of Topeka, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Fatzer, C. J.: This appeal arises out of a controversy over the existence of a fire insurance policy and the beneficiaries thereunder.

The facts are not in serious dispute.

The plaintiffs, E. R. Pattison, and his wife Arlie W. Pattison, purchased a dwelling located at 108 Widigan Road in Topeka. The property was covered by a note and mortgage held by Capitol Federal Savings & Loan Association (Capitol Federal) in the

amount of $18,000, which the Pattisons assumed and agreed to pay. As a part of the transaction, a policy of insurance was obtained from the State Farm Fire & Casualty Company (State Farm) in the amount of $19,000, covering the building, unscheduled personal property in the amount of $7,600, and additional living expenses in case of damages to the real estate in the amount of $3,600. There was also extensive personal liability coverage in the amount of $25,000, and medical damage and physical damage to the property of others.

The policy also had a loss payable clause in favor of the mortgagee, Capitol Federal. The effective date of the policy was April 1, 1966, and carried an endorsement designating it to be a "continuous renewal plan," subject to cancellation for default in the annual premium payments only after ten days written notice. No contention is now made by any of the parties to this litigation that the insurance policy was not in full force and effect at all material times here involved.

The Pattisons defaulted on their payments under the note and mortgage, and Capitol Federal commenced foreclosure proceedings. A judgment of foreclosure was entered and a foreclosure sale was had at which Capitol Federal purchased the property for the sum of $18,384.81, of which $60.80 was in cash and the balance was the receipt of the judgment of $18,080.31, plus interest to the date of the sale. The foreclosure sale was confirmed by the district court on March 13, 1968, and the Pattisons were granted a six month redemption period from March 7, 1968, the date of the sale.

On April 1, 1968, the date the next premium was due, the State Farm insurance policy was returned to the agent of State Farm by an employee acting on behalf of Capitol Federal, accompanied by a request to cancel the policy as of April 1, 1968. This was done without the knowledge or consent of the Pattisons. On April 1, 1968, Capitol Federal also obtained an insurance policy on the property in controversy from Kansas City Fire & Marine Insurance Company with coverage in the amount of $19,000. On April 11, 1968, State Farm sent a letter to the Pattisons, stating:

"This letter acknowledges your resquest to cancel the above policy. The cancellation has been made, effective April 1, 1968."

The letter was signed by the underwriter for State Farm.

At the trial, the Pattisons testified they had never received the letter and had not seen a copy until it was shown to them after the fire.

The Pattisons remained in possession of the premises under their equity of redemption. On April 23, 1968, a fire occurred which resulted in extensive damage to the property. The Pattisons called the agent of State Farm who informed them they had no insurance. They then went to their attorney who immediately tendered a premium payment which was refused by State Farm. The Pattisons then brought an action against State Farm and Capitol Federal.

The district court first proceeded to try the issue of liability. The issue as to the damages recoverable in the event plaintiffs should prevail, was reserved for a later determination. The district court's statement of the contentions of the parties reads:

"The plaintiffs contend that the defendant Capitol Federal ordered the cancellation of the policy of insurance without notice to or authority of the plaintiffs and that the defendant State Farm's cancellation of the policy upon the request of Capitol Federal without any authority from the plaintiffs, as owner of the policy, was not an effective cancellation. The plaintiffs further allege and contend that as a result of the fire the house was damaged in the amount of $12,730.52 and that they suffered personal property loss in the amount of $4,919. The plaintiffs further contend in this case that the State Farm Insurance Company has breached its duty by its refusal to recognize the existence of the insurance policy and to make payments thereunder and that the defendant Capitol Federal by its unauthorized order of cancellation breached its duty toward the plaintiffs and is liable to them the same as an insurer. Plaintiffs further contend that they are entitled to attorneys fees in accordance with K. S. A. 40-256 and 40-908.

"The defendant Capitol Federal contends that as the holder of the certificate of purchase after the sheriff's sale it had a right to request cancellation of the policy of insurance since the interest of the Pattisons, the mortgagors, had been extinguished by the foreclosure sale. It denies that it breached any duty owed to the Pattisons to provide insurance coverage during the period of redemption.

"The defendant State Farm admits that it cancelled the policy at the request of Capitol Federal but that it was within the knowledge of the plaintiffs that the policy was being cancelled and that notice of cancellation was mailed to the plaintiffs by State Farm."

The district court stated the issues and its conclusions thereon in substance as follows:

1. The State Farm insurance policy was in effect during the redemption period after the foreclosure sale which occurred on March 7, 1968, unless it was cancelled in accordance with its provisions—the mortgagor continues to have an insurable interest in the mortgaged property after foreclosure and sale of the property until the expiration of the period of redemption.

2. State Farm did not have the right to cancel the policy of in-

surance at the request of Capitol Federal, without the consent of the Pattisons.

3. The State Farm insurance policy involved here was not properly cancelled prior to the date of the fire on April 23, 1968, and was therefore in full force and effect on the date when the fire occurred.

Following the court's judgment on the issue of liability, Capitol Federal filed a cross-claim against State Farm claiming the proceeds of the policy by reason of the fire which destroyed the dwelling.

The district court then proceeded to determine the loss occurring under the policy and the claim of Capitol Federal to the proceeds from the insurance policy for damages to the real estate. It concluded:

"The Court incorporates herein the Statement of Facts and Conclusions of Law contained in the memorandum decision of October 22, 1969. On the basis of the entire record before the Court the Court finds that the fire loss suffered by plaintiffs to their personal property amounted to the sum of $3,000.00 and further that they suffered damages in the amount of $600.00 because of increased living expenses. The Court further finds that the damage to the real property resulting from the fire was in the amount of $10,000.00.

"Assuming an effective policy at the time of the fire there is no question that the plaintiffs alone are entitled to judgment for loss of the personal property and increased living expenses against the defendant State Farm in the total amount of $3,600.00. The most difficult issue in this case concerns the claim of Capitol Federal to the proceeds from the insurance policy for the fire damage to the real estate in the amount of $10,000.00. The Court has concluded that under the peculiar facts and circumstances of this case the plaintiffs alone are entitled to the full amount of the $10,000.00 . . ."

The defendants, State Farm and Capitol Federal, have appealed. Although the two appellants have filed separate briefs, their main contentions overlap and may be considered together. It should here be noted that State Farm denies liability under the policy, but states that if it is liable thereunder, the proceeds should be paid to Capitol Federal.

Capitol Federal concedes that its points on appeal sum up the question, "Should the Pattisons or Capitol Federal be awarded the $10,000.00 for damages to the house?"

State Farm contends that only the mortgagee, the purchaser at the foreclosure sale, had a claim to the proceeds, and further, that as purchaser, Capitol Federal was not entitled to recover because of its wrongful conduct in requesting cancellation of the policy.

We first turn to Capitol Federal's contention of its right to recover the proceeds of the policy.

Under the facts in this case, it would serve no useful purpose to engage in a lengthy discussion as to the right generally of a mortgagee and purchaser at a foreclosure sale to participate in the proceeds of a fire insurance policy, such as here under consideration. The question in this case must be determined on the particular facts involved. On the question of the right of Capitol Federal to the damages to the building from the proceeds of State Farm's policy, the district court stated, in part:

"In the instant case there is no dispute that the defendant Capitol Federal, acting through its employee Mrs. Elaine Nash returned the State Farm policy to the State Farm agent and requested that the policy be cancelled as of April 1, 1968. Clearly Capitol Federal intended to waive whatever rights it might have under the policy either as mortgagee or as purchaser at the foreclosure sale. It was stipulated at the time of the trial that Capitol Federal purchased its own insurance coverage from the Glens Falls Insurance Company [Kansas City Fire & Marine Insurance Company] in the total amount of $19,000.00 after it attempted to cancel the State Farm policy and that this new policy was in force and effect as of April 23, 1968, the date of the fire. It was further stipulated that Capitol Federal received the sum of $6,250.00 from Glens Falls Insurance Company under its policy and that later it sold the property in the damaged condition for $15,000.00. It has further been stipulated that the property was never redeemed by the Pattisons. As pointed out heretofore, as purchaser at the sale Capitol Federal is entitled to keep the full proceeds of its insurance policy as purchaser at the foreclosure sale and the proceeds of that sale did not accrue in any way to the benefit of the Pattisons as owners of the equity of redemption. *Deming v. Dickerman,* supra."

\* \* \* \* \*

"Capitol Federal asserts a right to the proceeds of the State Farm Insurance policy by virtue of a provision in the original promissory note and mortgage signed by the original mortgators John F. Shumaker and JoAnn E. Shumaker which provided that 'In the event of foreclosure of the mortgage securing this note, all right, title and interest of the undersigned in and to the insurance policies then in force shall pass to the purchaser.' *The evidence is undisputed in this case that after the foreclosure sale Capitol Federal wrongfully directed the cancellation of the policy and State Farm cancelled the policy without giving proper notice to the Pattisons as required by the policy. Under these circumstances it would be manifest injustice to permit Capitol Federal to wrongfully take such steps and obtain its own insurance and then claim the benefit of both policies.* It should be emphasized that as a result of Capitol Federal's attempt to cancel the policy and State Farm's wrongful cancellation of the same, the Pattisons were put in a position of being unable to redeem their home. Since they were unable to obtain the proceeds of the policy they were unable to obtain other financial assistance from other lending agencies to make it possible for them to redeem. Because of the wrongful attempt at

cancellation of the policy it was the Pattisons who have been the ultimate losers in this case up to the present time. *Capitol Federal Savings and Loan has been fully compensated for any loan it may have had on the property and in fact as shown by the evidence has received a total of $21,250.00 from the sale of the damaged property and from the insurance proceeds from Glens Falls Insurance Company. It simply cannot be a fair application of the law in this case to permit Capitol Federal now to collect the additional sum of $10,000.00 from State Farm Fire and Casualty Company under its policy issued to the plaintiffs."* (Emphasis supplied.)

The facts as noted by the district court are not in dispute and under such facts, we agree with its conclusion that Capitol Federal had the right to cancel, or abandon its rights, if any, as mortgagee, or as purchaser at the foreclosure sale, under the State Farm policy issued to the Pattisons, and take out new insurance covering its insurable interest in the property to the extent of the indebtedness, which it did. Capitol Federal recovered $6,250 from its insurer, the Kansas City Fire & Marine Insurance Company. It also received $15,000 from the sale of the property, or a total of $21,250 to cover its $18,000 mortgage. We can find no logical reason for giving Capitol Federal another $10,000 from the insurance policy covering the mortgagors' interest, which it wrongfully attempted to cancel.

The district court referred to the conduct of Capitol Federal as a waiver of its right to participate in the proceeds from the State Farm policy. Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency of conduct, is not very important. However Capitol Federal's conduct is to be designated, it operates as a bar against its recovery in this case. (*Nogrady v. Fourth National Bank,* 136 Kan. 43, 12 P. 2d 787.)

In *Browning v. Lefevre,* 191 Kan. 397, 381 P. 2d 524, this court held:

"The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction." (Syl. ¶ 2.)

In *Bowen, Administrator v. Lewis,* 198 Kan. 706, 426 P. 2d 244, this court said:

"There are certain principles recognized which are analogous to the doctrine of estoppel and which are sometimes described as *quasi*-estoppel. There the conscience of a court is repelled by the assertion of rights inconsistent with a litigant's past conduct. (*Graybar Electric Company v. McClave,* 91 Ariz. 223, 371 P. 2d 350; 3 A. L. R. 3d 750.)" (l. c. 712.)

See, also, *Bank v. Jesch,* 99 Kan. 797, 800, 163 Pac. 150, and *Wilson v. Stephenson,* 143 Kan. 91, 96, 97, 53 P. 2d 874.

We now turn to State Farm's argument that,

"Plaintiffs were not entitled to recover for fire damage to the house which occurred during the period of redemption after the mortgage foreclosure sale for the reason that plaintiffs held only the bare title to the property in trust for the purchaser at the sale subject to plaintiffs' right of redemption. . . ."

The statement relied on is not a correct statement of the law. It is well settled that the mortgagor is entitled to rents and profits accruing during the period of redemption (*Broadhurst Foundation v. New Hope Baptist Society,* 194 Kan. 40, 397 P. 2d 360; *Topeka Savings Association v. Beck,* 199 Kan. 272, 428 P. 2d 779), and that a mortgagor and mortgagee may each separately insure his own distinct interest in the property. In *New Hampshire Ins. Co. v. American Employers Ins. Co.,* 208 Kan. 532, 492 P. 2d 1322, it was said:

"It is well settled that a mortgagor and mortgagee have separate and distinct interests in the same property which each may insure (4 Appleman, Insurance Law and Practice, § 2186; 3 Couch on Insurance, 2d, § 23:35)." (l. c. 535.)

We conclude the mortgagor has an insurable interest after the foreclosure sale and during the period of redemption, which terminates with the expiration of such right—if the mortgaged property should be damaged during the period of redemption, the mortgagors' equity of redemption might well be destroyed.

In 3 Couch on Insurance 2d, § 24:70, p. 155, the rule is stated as follows:

"The insurable interest which a mortgagor has at the time a policy is issued continues beyond default and the beginning of a foreclosure proceeding and after the mortgage foreclosure sale and during the redemption period. . . . While the right in equity to redeem the mortgaged premises exists, the mortgagor retains his insurable interest therein, even though there has been a judgment or decree of foreclosure; this, because he has an interest in the preservation of the property, since the destruction thereof would lessen the value of his equity of redemption."

The same rule is stated in 4 Appleman, Insurance Law and Practice, § 2187, pp. 107-109, as follows:

"A mortgagor may insure his equitable interest in the property, even though the instrument intended as a mortgage were in form an absolute deed. This is particularly true where the mortgagor is in possession and prior to default, but such insurable interest is held to exist even after foreclosure is begun.

"This must, of necessity, be the rule, since the majority of courts have regarded the mortgagor's right to redeem as an insurable interest of itself.

Nor is such insurable interest lost until the period of redemption has expired. And such insurable interest during the redemption period is for the full value of the property."

See, also, *Carpenter v. Providence Washington Insurance Company,* 41 U. S. 495, 10 L. Ed. 1044.

As indicated, there are two separate interests in the same property to be protected. The holder of the certificate of purchase wants the property insured to protect his investment during the period of redemption. The mortgagor wants the property kept intact during the period of redemption in order that it be worthy of redemption. These interests may be insured severally, or jointly.

The district court entered judgment in favor of the Pattisons and against State Farm for $3,000 damages to personal property, $600 for additional living expense, $10,000 for damages to real estate, and $4,750 attorney fees.

State Farm has appealed only from the judgment allowing the Pattisons to recover $10,000 for damages to real estate, and from the allowance of attorney fees. It contends the district court erroneously allowed $10,000 damages to real estate, based upon the inability of the Pattisons to redeem the property because of State Farm's wrongful cancellation of the policy. Its main contention in this point is that there was no evidence to support the following finding and conclusion of the district court:

". . . It should be emphasized that as a result of Capitol Federal's attempt to cancel the policy and State Farm's wrongful cancellation of the same, the Pattisons were put in a position of being unable to redeem their home. Since they were unable to obtain the proceeds of the policy they were unable to obtain other financial assistance from other lending agencies to make it possible for them to redeem . . ."

E. R. Pattison testified that after the foreclosure proceedings, he put panelling on the inside of the house because he wanted to get a new loan. The foreclosure proceedings were admitted in evidence. They disclosed that appellees filed a motion to extend their redemption period based on their inability to redeem because of the fire and the controversy over the insurance. We cannot say that there was no evidence to support the district court's finding.

What has been said disposes of the controversy over the allowance of attorney fees.

A careful examination of the record discloses no trial errors which would justify a reversal of the judgment, or require the granting of a new trial.

The judgment is affirmed.

PRAGER, J., not participating.