Silas J. Jackson and Andre J. Jackson appeal from a summary judgment entered by the Mobile Circuit Court in favor of National Security Fire and Casualty Company, Inc. ("National Security"). We affirm in part, reverse in part, and remand.
On August 27, 2004, the Jacksons borrowed $17,645.50 from Acceptance Loan Company, Inc. ("Acceptance"). As security for the loan, the Jacksons mortgaged a piece of real property they owned ("the property"). The Jacksons purchased from National Security an insurance policy insuring the property against loss from fire and other casualties. The policy period began on August 28, 2004, and ran for one year. The policy limits were $35,000, and Acceptance was named in the policy as the insured mortgagee. The Jacksons paid the annual premium for the insurance policy.
The Jacksons defaulted on their payment obligations to Acceptance. Acceptance foreclosed on the property, and the property was sold at public auction on April 27, 2005. At the foreclosure sale, Acceptance purchased the property for $20,121.64 and obtained a foreclosure deed. However, the Jacksons continued to reside in the home on the property.
On August 8, 2005, the home was destroyed by fire. After the Jacksons filed a claim on their insurance policy with National Security, National Security paid Acceptance $24,723.42, the balance due from the Jacksons under the foreclosed mortgage.[1] *Page 857 
On October 12, 2005, National Security filed the present declaratory-judgment action against the Jacksons. National Security alleged that the Jacksons claimed that they had an insurable interest in the property at the time of the fire based on their statutory right to redeem the property from foreclosure, and that, as a result, they were entitled to the balance of the insurance proceeds, $10,276.58, which remained after National Security paid Acceptance the balance due under the foreclosed mortgage. National Security contended that the statutory right of redemption is a privilege and not a property interest and that because the property was sold to Acceptance at the foreclosure sale, the Jacksons did not have an insurable interest in the property at the time of the; fire. On this basis, National Security sought a judgment declaring that the Jacksons had no entitlement to any insurance proceeds.
On November 2, 2005, the Jacksons filed an answer to the complaint in which they contended that they did have an insurable interest in the property at the time of the fire. Further, the Jacksons asserted counterclaims against National Security in which, among other things, the Jacksons alleged a breach by National Security of the insurance contract, as well as a bad faith refusal to pay to the Jacksons insurance proceeds allegedly due under that policy. The Jacksons sought compensatory and punitive damages, attorney fees, and costs.
On January 23, 2006, National Security filed a motion for a summary judgment on its claims and the Jacksons' counterclaims. It contended that the Jacksons' statutory right of redemption did not constitute an insurable interest in the property and, as a result, the Jacksons' were not entitled to collect the insurance proceeds they sought. As to the Jacksons' counterclaims, National Security argued that it had not refused to pay the insurance proceeds but, instead, had filed the present action seeking a determination from the court as to whether it was required to do so. National Security also argued that the Jacksons could not prove the elements of the tort of bad faith.
The Jacksons filed a response to National Security's motion in which they argued that their statutory right to redeem the property constituted an insurable interest and that National Security's summary-judgment motion was due to be denied and their counterclaims submitted to a jury. The Jacksons also filed their own motion for a summary judgment, adopting in support thereof their opposition to National Security's summary-judgment motion. They asserted additional arguments with regard to their claims for costs and attorney fees, contending that a "special equity" existed whereby the trial court was free to award such costs and fees "in view of the haste with which National filed suit and the relatively small sum involved."
On February 15, 2006, the trial court granted National Security's summary-judgment motion, denied the Jacksons' summary-judgment motion, and entered a judgment in favor of National Security. The court held that the statutory right to redeem property does not constitute an insurable interest. The Jacksons appeal.
We review de novo the entry of a summary judgment, applying the same standard that the trial court applied. McClendon v.Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958
(Ala. 1992). Our *Page 858 
Supreme Court set forth that standard in Capital AllianceInsurance Co. v. Thorough-Clean, Inc., 639 So.2d 1349
(Ala. 1994):
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co., 639 So.2d at 1350.
The primary question before us on appeal is one of first impression in Alabama and may be simply stated as follows: Is the statutory right to redeem property that has been sold at a foreclosure sale an insurable interest? We conclude that it is, and we reverse the trial court's judgment insofar as it held to the contrary.
The trial court based its judgment in favor of National Security on the ground that § 6-5-250, Ala. Code 1975, states that the right of redemption provided therein is not a property right. Section 6-5-250 reads as follows:
 "The statutory rights of redemption given or conferred by this article are mere personal privileges and not property or property rights. The privileges must be exercised in the mode and manner prescribed by statute and may not be waived in a deed of trust, judgment, or mortgage, or in any agreement before foreclosure or execution sale. The right of privilege conferred under this article is not subject to levy and sale under execution or attachment nor is it subject to alienation except in the cases provided for in this article; but if the right or privilege is perfected by redemption as provided in this article, then, and not until then, it becomes property or rights of property subject to levy, sale, alienation, or other disposition, except as is expressly authorized by statute."[2]
While it is true that § 6-5-250 states that the statutory right of redemption is not a property right, it appears that the focus of that section, read as a whole, is on the fact that the statutory right of redemption is not alienable as an interest or right in property. In any event, the concept of an "insurable interest" and the concept of a "property interest" are not synonymous. In American Equitable Assurance Co. v. PowderlyCoal Lumber Co., 225 Ala. 208, 142 So. 37 (1932), our Supreme Court discussed the concept of "insurable interest":
 "In the early history of insurance, there was a tendency to require title and ownership as a basis of insurable interest, but later decisions have adopted a more liberal doctrine, and it is not now *Page 859 essential to an insurable interest that one should have a property in the thing insured, or an estate, legal or equitable; the term `insurable interest' being more extensive than property or estate. Any qualified or limited interest in the subject of insurance is sufficient, and an equitable interest is sufficient to support an insurable interest. It has likewise been held that any reasonable expectation of legitimate profit or advantage to spring from property is sufficient to give an insurable interest."
American Equitable Assur. Co., 225 Ala. at 212,142 So. at 39 (emphasis added). The Supreme Court further discussed the "insurable interest" concept in Pacific National FireInsurance Co. v. Watts, 266 Ala. 606, 97 So.2d 797 (1957):
 "[O]ne can have an insurable interest although he has no property in the thing insured, but any limited or qualified interest, equitable right or expectancy of advantage is sufficient to support an insurable interest."
Watts, 266 Ala. at 610, 97 So.2d at 801.
More recently, our legislature codified the definition of "insurable interest" at Ala. Code 1975, § 27-14-4:
 "(a) No contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
 "(b) `Insurable interest,' as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.
 "(c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury or impairment thereof."
Our Supreme Court has held that this statute does not replace the previous judicial interpretations of "insurable interest," but is "`[m]erely declaratory of those legal principles which have long governed the concept of insurable interest in this State.'"Brewton v. Alabama Farm Bureau Mut. Cos. Ins. Co.,474 So.2d 1120, 1122 (Ala. 1985) (quoting National Sec. Fire Cos. Co. v. Hester, 292 Ala. 592, 596, 298 So.2d 236, 239
(1974)).
The two Alabama cases cited by the appellants and the appellee do not squarely address the ultimate issue in this case. InNational Union Fire Insurance Co. v. Deas,229 Ala. 477, 158 So. 323 (1934), the question presented was whether a foreclosure worked a forfeiture of a casualty insurance policy under certain language of the policy itself.
In Aetna Insurance Co. v. Kacharos, 226 Ala. 504,147 So. 438 (1933), which was cited in Deas and which National Security describes as "on point," our Supreme Court dealt solely with the issue of whether the purchaser of real property at a foreclosure sale is the "unconditional and sole owner" of the purchased property during the period in which the mortgagor can redeem the property. Although the Supreme Court held in the affirmative, the Court did not address whether the mortgagor, who possessed the right to redeem the property,also had an insurable interest in the property. Given that "one can have an insurable interest although he has no property in the thing insured," Watts, 266 Ala. at 610,97 So.2d at 801, we fail to see how the holding inKacharos resolves the issue with which this court is presently faced.
Although the question of whether the statutory right of redemption constitutes an insurable interest is one of first impression in this State, several treatises are in agreement that a right to redeem real *Page 860 
property after a foreclosure sale does constitute an insurable interest in that property. For example, according to Couch onInsurance,
 "[t]he insurable interest which a mortgagor has at the time a policy is issued continues beyond default and the beginning of a foreclosure period and after the mortgage foreclosure sale and during the redemption period.
 ". . . .
 "Generally, the mortgagor's insurable interest terminates with the expiration of the period of redemption. In some states, however, a mortgagor's interest may continue beyond the redemption period, until the purchaser has complied with his or her bid or executed a bond for its payment. The mortgagor's interest will also be deemed to continue beyond the redemption period where the mortgagor has a statutory right of first refusal. In states in which there is no right of redemption subsequent to a foreclosure sale, such sale and the delivery of the deed by the sheriff terminate the mortgagor's insurable interest."
3 Lee R. Russ et al., Couch on Insurance § 42:30 (3d ed.2005) (footnotes omitted).
44 Am.Jur.2d Insurance § 953 (2003) states: "The insurable interest of a mortgagor continues after foreclosure and during the redemption period, but the expiration of the redemption period of a mortgage is generally regarded as terminating the mortgagor's interest." (Footnotes omitted.) Similarly, 44 C.J.S. Insurance § 228 (1993) states:
 "A mortgagor has an insurable interest even while in default; such interest is not divested by the rendition of a decree of foreclosure, for he retains the equity of redemption, and, by virtue thereof, and until it expires, an insurable interest, and this interest is terminated only by a failure to redeem within the specified time."
(Footnotes omitted.)
In Carr v. Union Mutual Insurance Co., 598 P.2d 269
(Okla.App. 1979), the Oklahoma Court of Civil Appeals confronted facts similar to those now presented to this court. In that case, the plaintiffs owned real property that was mortgaged and on which they obtained a casualty insurance policy.Carr, 598 P.2d at 269-70. The mortgage was foreclosed and the property was sold at a foreclosure sale. Id. at 270. After the sale, but before the expiration of the redemption period, a fire destroyed the house located on the property.Id. The insurance company argued that the plaintiffs did not have an insurable interest in the property at the time of the fire because the property had already been sold at the foreclosure sale. Id. The appellate court disagreed:
 "In the present case the redemption period, or at least the possibility of redemption, had not expired because the foreclosure sale had not been confirmed[3] at the time of the fire. Therefore the [plaintiffs] still had an insurable interest in both the dwelling and their unscheduled personal property. Since the policy remained in effect at the time of the loss and the [plaintiffs] had an insurable interest which was insured, they were entitled to recover as a matter of law."
Carr, 598 P.2d at 271.
Likewise, in Pattison v. State Farm Fire CasualtyCo., 209 Kan. 167, *Page 861 495 P.2d 975 (1972), the plaintiffs purchased a house and land and, in conjunction with that transaction, assumed a promissory note and a mortgage, and obtained an insurance policy on the house. After the plaintiffs defaulted on the note, the mortgage was foreclosed and the house was sold at a foreclosure sale. After the foreclosure sale was confirmed, the plaintiffs were granted a six-month period in which they could redeem the property, during which the house was extensively damaged by fire.[4] On appeal, the insurance company argued that the plaintiffs were not entitled to recover under the insurance policy because, according to the insurance company, the plaintiffs did not have an insurable interest in the property at the time of the fire.Pattison, 209 Kan. at 173, 495 P.2d at 980. The Kansas Supreme Court disagreed, holding that a mortgagor "has an insurable interest after the foreclosure sale and during the period of redemption, which terminates with the expiration of such right. . . ." Id.
Other courts have reached the same conclusion. See, e.g.,Parker v. Iowa Mut. Tornado Ins. Ass'n, 220 Iowa 262, 269,260 N.W. 844, 848 (1935) ("It is our conclusion that the mortgagor's insurable interest does not end until the period of redemption has expired."); Malvaney v. Yager,101 Mont. 331, 338, 54 P.2d 135, 138 (1936) ("Likewise, the mortgagor may insure his interest without regard to that of the mortgagee, and, if he does so, his protection continues after foreclosure and throughout the period of redemption therefrom."); Bakerv. Penn. Fire Ins. Co., 81 Mont. 271, 280, 263 P. 93, 97
(1928) ("It seems to be the general rule that the mortgagor's insurable interest in the mortgaged property continues to exist after foreclosure sale and before the time for redemption has expired.").
We agree with the foregoing authority and conclude that Alabama's statutory right to redeem, conferring as it does the right to regain title to foreclosed property, constitutes an "actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment," Ala. Code 1975, § 27-14-4(b), and therefore constitutes an insurable interest. Given the fact that "one can have an insurable interest although he has no property in the thing insured," Watts, 266 Ala. at 610, 97 So.2d at 801, we find unpersuasive National Security's argument that the lack of a property interest prevents a mortgagor from insuring property that he or she has a statutory right to redeem. The trial court's judgment in this regard is therefore due to be reversed.[5] *Page 862 
National Security argues that Silas Jackson did not vacate the property following Acceptance's demand that he do so, and, as a result, he waived his right to redeem the property pursuant to Ala. Code 1975, § 6-5-251.[6] Although this allegation appeared in National Security's complaint, National Security did not seek a summary judgment on this basis and the trial court did not enter the summary judgment on this basis. As a result, this argument does not provide a basis on which we can affirm the summary judgment. Although our Supreme Court has held that we may "affirm the trial court on any valid legal ground," the exception to this rule is that this court may not affirm a summary judgment on a ground the movant did not argue before the trial court when to do so would deprive the nonmovant of an opportunity to present substantial evidence creating a genuine issue of material fact as to that ground. See Ex parteCanada, 890 So.2d 968, 971 (Ala. 2004).
We turn now to the Jacksons' counterclaims. To the extent the Jacksons counterclaimed for a judgment that they were entitled to the insurance proceeds remaining after the payment of their debt to Acceptance, the trial court entered a summary judgment against the Jacksons based on its holding that the Jacksons did not have an insurable interest in the property at the time that the property was damaged. Because we have held that the Jacksons did, in fact, have an insurable interest in the property at the time that it was damaged, we reverse the trial court's judgment in this regard.
The Jacksons also sought compensatory and punitive damages for the breach of their insurance contract and for National Security's alleged bad faith in refusing to pay proceeds due under that contract. The trial court entered a summary judgment against the Jacksons on these claims on two grounds: First, the trial court held that there was no merit to the Jacksons' breach-of-contract claim because, according to the trial court, the Jacksons did not have an insurable interest. Our reversal of the trial court's holding as to the issue of whether the Jacksons had an insurable interest obviously means that we cannot uphold the trial court's summary judgment on the Jacksons' contract and bad-faith counterclaims on this basis.
The trial court also held, however, that National Security had not denied the Jacksons' claim for the insurance proceeds but, instead, had merely sought a judicial declaration as to whether it was required to pay that claim. On appeal, the Jacksons do not argue that the trial court erred when it so held, and, as a result, we affirm the trial court's judgment in this *Page 863 
regard. See Gloor v. BancorpSouth Bank, 925 So.2d 984,992 (Ala.Civ.App. 2005) ("When an appellant fails to argue an issue in brief, that issue is waived.").[7]
Finally, the Jacksons also sought an award of costs pursuant to § 6-6-231, Ala. Code 1975,[8] and an award of their attorney fees. The trial court denied these claims on the ground that they were moot because, according to the trial court, National Security was due to prevail on its declaratory-judgment claim. We have found that National Security was not entitled to prevail on its declaratory-judgment claim, and therefore the trial court's judgment against the Jacksons on their claims for costs and attorney fees cannot be sustained on that ground.
As to the issue of attorney fees, however, the parties present arguments on appeal as to whether the trial court's judgment should be affirmed on the separate legal ground that an award of attorney fees to the Jacksons would be contrary to the so-called "American Rule" followed in Alabama. See generally Lanier v.Moore-Handley, Inc., 575 So.2d 83, 85 (Ala. 1991). The Jacksons recognize in their brief that Alabama follows the American Rule, but note that there are exceptions to it, including circumstances involving a "special equity."Id.[9] The Jacksons argue that this case "represents a case of `special equity,'" because "[u]nless an insurance company can be taxed with [its] insured's attorney fees in a case like this one, where the claim is relatively small, [it] will have considerable incentive not to pay smaller bona fide claims, knowing that an insured's court victory will be so costly that it will not be feasible to pursue." Although the Jacksons couch their argument as based on the special-equity exception, in essence, they ask this court to recognize a new exception to the American Rule that would apply whenever the amount at issue in a lawsuit is relatively small compared to the potential amount of attorney fees necessary to prosecute the claim. We decline to do so and, accordingly, that portion of the trial court's judgment denying the Jacksons' claim for attorney fees is due to be affirmed.[10]
Based on the foregoing, we affirm the trial court's entry of a summary judgment on the Jacksons' breach-of-contract claim, their bad-faith claim, and their attorney-fee claim; we reverse all other aspects of the judgment; and we remand the cause to the trial court for further proceedings consistent herewith. *Page 864 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
PITTMAN, J., recuses himself.
[1] Acceptance subsequently conveyed the property back to the Jacksons, the debt the Jacksons owed it having been paid by the insurance proceeds. Upon doing so, Acceptance dismissed a suit it had filed against one of the Jacksons alleging unlawful detainer of the property. In its motion to dismiss the suit, Acceptance represented to the court that the Jacksons had redeemed the property from foreclosure.
[2] Section § 6-5-248(b), Ala. Code 1975, provides that an individual whose real property is sold at a foreclosure sale by virtue of the foreclosure of a mortgage thereon "may exercise the right of redemption . . . within one year from the date of the [foreclosure] sale."
[3] Under Oklahoma law, confirmation is the process by which a trial court determines that the foreclosure sale was conducted in conformity with the law. Okla. Stat. Ann. tit. 12, § 765 (West 2000). Oklahoma law provides that a mortgagor's right to redeem property "is exercisable any time between default and confirmation of the sheriff's sale." Lincoln Mortg. Investorsv. Cook, 659 P.2d 925, 928 (Okla. 1982).
[4] In confirming a foreclosure sale, a court applying Kansas law would determine whether the sale's conduct conformed to law and equity. Kan. Stat. Ann. § 60-2415 (1994). Unlike Oklahoma law (see note 3, supra), the period of redemption under Kansas law does not end at the lime that the court confirms the foreclosure sale. See Kan. Stat. Ann. §§ 60-2414, 2415(1994).
[5] The trial court also attempted to justify its conclusion that the Jacksons did not have an insurable interest in the property on an alternative basis. In its judgment, it stated that, at the time the home on the property was destroyed, the Jacksons "were not owners, but were tenants by sufferance, or squatters, or trespassers." A possessor of this type, it stated, "does not have a right to which he can enforce and, therefore, at the time of the loss the [Jacksons] did not have an interest to be insured under the subject policy." In support, the trial court cited Fidelity Phenix Fire Insurance Co. of New York v.Raper, 242 Ala. 440, 442, 6 So.2d 513, 515 (1941), for the proposition that "[t]he law is clear that a person with no interest in the land other than that of a tenant by sufferance, or a squatter, or a trespasser, has no insurable interest in the property."
Although it may be true that, at the time the property was damaged, the Jacksons did not possess the property under a claim of title but, instead, were merely tenants by sufferance, squatters, or trespassers, it is not their status aspossessors of the land that provided them with an insurable interest in the property. Instead, their insurable interest in the property was based on their statutory right to redeem the property.
[6] Ala. Code 1975, § 6-5-251, provides, in relevant part:
 "(a) The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgagor if in their possession or in the possession of anyone holding under them by privity of title, within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees.
 ". . . .
 "(c) Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor."
[7] Furthermore, to the extent that any portion of their argument could be construed as addressing this counterclaim, we note that the Jacksons failed to cite any legal authority relevant to this counterclaim and the trial court's ruling thereon. "`Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant.'" Spradlin v.Birmingham Airport Auth., 613 So.2d 347, 348 (Ala. 1993) (quoting Sea Calm Shipping Co., S.A. v. Cooks,565 So.2d 212, 216 (Ala. 1990)); see also Rule 28(a)(10), Ala. R.App. P.
[8] Section 6-6-231 provides: "In any proceeding under this article, the court may make such award of costs as may seem equitable and just."
[9] As the court in Lanier indicated, exceptions to the American Rule have been recognized in Alabama in cases where the awarding of fees are provided for in a contract or by statute, as well as in cases involving a "special equity."Lanier, 575 So.2d at 85.
[10] Consistent with the above-stated principles, there are no Alabama cases that support an exception to the American Rule under these circumstances; the Jacksons have not cited to us any authority from other jurisdictions supportive of such an exception.