# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH RIAD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. K24C-11-008 JJC |
| v. | : | |
| | : | |
| LIBERTY MUTUAL PERSONAL | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

Submitted: March 4, 2026
Decided:   March 30, 2026

## <u>ORDER</u>

On this 30th day of March 2026, having considered Defendant Liberty Mutual's motion for summary judgment and Plaintiff Joseph Riad's opposition, it appears that:

1.      Defendant Liberty Mutual Personal Insurance Company (hereinafter, "Liberty Mutual") insured Mr. Riad's rental property in the City of Wilmington (hereinafter, the "City"). Mr. Riad failed to pay City taxes and other fees. As a result, the City instituted monition proceedings against the property, which culminated in a Sheriff's sale of the property to a third-party. The controlling monition process provided Mr. Riad sixty days to redeem his interests in the property. Someone then vandalized it during the redemption period which triggered an alleged loss under the policy. Mr. Riad then filed a timely claim with Liberty Mutual. Thereafter, Liberty Mutual denied the claim and Mr. Riad sued for $100,000 in coverage, punitive damages for bad faith, pre- and post-judgment

interest, and attorneys' fees.[1] Presently, Liberty Mutual moves for summary judgment on an issue of first impression: whether Mr. Riad had an insurable interest in the property at the time of the loss.

2. The facts necessary to resolve the motion are undisputed. Namely, Mr. Riad failed to pay City taxes and other City-imposed charges. As a result, the City brought a monition action against the property.[2] The New Castle County Sheriff then scheduled a sale on October 12, 2021.[3] Chetan Realty Series LLC (hereinafter, "Chetan Realty") was the winning bidder at the sale, subject to Mr. Riad's right to redeem.[4] The City Charter and City Code provided Mr. Riad the right to redeem the property within sixty days of confirmation of the sale by paying an amount sufficient to satisfy the obligation and make the third-party purchaser whole.[5] Someone then vandalized the property inside of that sixty-day window,[6] and Mr. Riad reported the claim to Liberty Mutual on December 3, 2021.[7] Thereafter, he redeemed the property on January 10, 2022.[8] Germanely, Mr. Riad retained title to the property at all times relevant to his claim.

---

[1] D.I. 1 at 6.

[2] D.I. 17, Ex. D. The parties both assume that Title 9's monition provisions, which are applicable only to New Castle County and Sussex County monitions, apply. While the Sheriff of New Castle County executed the monition sale in this case, *the City's monition process* controlled under the relevant provisions in the Wilmington City Charter and the City Code. *See* 59 Del. L. ch. 167, § 1 (providing a sixty-day right to redeem properties sold for City taxes); *see also* Wilm. C. § 4-148 (mirroring the City Charter provision providing the same).

[3] D.I. 17, Ex. C.

[4] D.I. 19, Ex. 6.

[5] Wilm. C. § 4-148.

[6] D.I. 25, Ex. 2 at 65:23-66:6.

[7] *Id.*

[8] D.I. 19, Ex. 6. The parties operate on the incorrect assumption that the Court confirmed the sale as a matter of course on October 21, 2021. If that were correct, since Mr. Riad did not redeem the property until January 10, 2022, he would have done so outside the sixty-day window. In actuality,

3.     Liberty Mutual contends that the policy was void because Mr. Riad had no insurable interest in the property at the time of the loss.[9]  To that end, Liberty Mutual asserts that Chetan Realty became the equitable owner of the property after the sale, which divested Mr. Riad of any ownership interest.[10]  In response, Mr. Riad contends that Liberty Mutual waived this argument by failing to assert it in its answer.[11]  He also focuses on the facts that (1) he had legal title to the property—the deed—at the time of the loss, and (2) he had the right to redeem the property when he incurred the loss.[12]  Finally, Mr. Riad emphasizes that he did, in fact, redeem the property, which he contends provides additional circumstantial evidence that he retained a significant stake in the property during the redemption period.

4.     Under Superior Court Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

the sale was not confirmed until November 19, 2021.  The parties' misunderstanding is a common one consistent with those of a number of successful third-party bidders.  Namely, pursuant to Superior Court Civil Rule 69(d), the confirmation of a sheriff's sale does not occur until the first Friday, succeeding the first Thursday *after the Sheriff files the required return,* passes without objection.  Here, the docket in the underlying monition case reflects that the New Castle County Sheriff filed the return on November 16, 2021.  Writ of *Venditioni Exponas* Monitions, *City of Wilmington v. Joseph Riad and Tax Parcel No. 26-026.40-431*, N21J-04192 (Del. Super.), D.I. 8.  As a result, under Rule 69(d), confirmation occurred on Friday, November 19, 2021.  This means that Chetan Realty filed its petition to finalize the matter prematurely, because it did so while Mr. Riad still had the right to redeem.  In other words, Mr. Riad's redemption of the property—on January 10, 2022—was timely because he did so within sixty days of the confirmation date.  Regardless, the existence of an insurable interest must be evaluated at the time of the loss.  Here, Mr. Riad's undisputed right to redeem the property at the time of the loss is one of only two material facts – the other being his undisputed retention of legal title at the time.

[9] D.I. 17 ¶ 13.

[10] *Id.* ¶¶ 9-13.

[11] D.I. 19 ¶¶ 14-15.  Liberty Mutual asserted the affirmative defense of failure to state a claim but did not plead a lack of insurable interest as an affirmative defense.  The Court elects to resolve this motion on the substance of the insurable interest arguments rather than on whether Liberty Mutual met pleading requirements by asserting only Rule 12(b)(6) in its affirmative defenses.

[12] D.I. 19 ¶¶ 16-17.

3

together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law."[13] On summary judgment, the Court must view the evidence in the light most favorable to the non-moving party—Mr. Riad.[14] Here, the motion raises one discrete issue—whether he had an insurable interest in the property.

5. As brief background regarding monitions, when a property owner fails to pay City taxes and other charges, the City—as the tax authority—initiates the monition process which culminates in a Sheriff's sale.[15] After the Sheriff's sale, the Superior Court "may inquire into the regularity of the proceedings thereunder, and either approve the sale or set it aside."[16] The confirmation of the sale then triggers a sixty-day period during which the owner can redeem his interest.[17] During the redemption period, the buyer becomes the equitable owner of the property, while the owner retains legal title.[18] If the owner fails to redeem the property, the third-party buyer files a "petition of no redemption."[19] The Court then reviews the petition and, if all is in order, directs the Sheriff to issue a deed to the purchaser.[20] Only after that

---

[13] Super. Ct. Civ. R. 56(c).

[14] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[15] 36 Del. L. ch. 143, § 1; *see also City of Wilmington v. Rochester*, 2002 WL 1587854, at *1-2 (Del. Super. July 16, 2002) (explaining the interrelationship between the Wilmington City Code's monition process and the sheriff's sale process in executing the monition).

[16] 36 Del. L. ch. 143, § 4.

[17] 59 Del. L. ch. 167, § 1; *see also* Wilm. C. § 4-148.

[18] *See Goldstein v. Mayor of Wilmington*, 447 A.2d 423, 424 (Del. 1982) (recognizing that the "purchaser of real property at a [s]heriff's [s]ale acquires an equitable interest in the property prior to the actual receipt of the deed").

[19] *Rochester*, 2002 WL 1587854, at *2.

[20] *Id.*

final step does the purchaser's ownership interest become exclusive. It is then deemed to retroactively relate back to the day of sale.[21]

6. Turning from the background process to substantive insurance law, an insurance contract is considered unenforceable if an insured has no insurable interest in the subject matter of the claim.[22] The Delaware Code defines an insurable interest as any "actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment."[23] This requirement aligns the interests of the insured with the insurer's interests by motivating both to avoid loss to the insured property or person. This makes sense because an insured without such an interest would be more likely to encourage a loss to trigger payment under the policy. In other words, the insurable interest requirement is good public policy because it ensures that the policy holder has a concrete stake in avoiding—as opposed to promoting—the loss.

7. In this case, Mr. Riad possessed an insurable interest in the property at the time of the loss for two reasons: he retained legal title to the property during the loss and he had an extant right to redeem the property. Neither the Court nor the parties found Delaware case law examining this issue in the context of the redemption period that follows a monition sale. The answer is nevertheless clear (1) when applying the basic principles applicable to the inquiry, and (2) considering persuasive authority from other jurisdictions.

8. First, 18 *Del. C.* § 2706(b) requires an insured to have an "actual, lawful, and substantial interest" in preventing the loss. Here, Mr. Riad retained title

---

[21] *Colt Lanes of Dover, Inc. v. Brunswick Corp.*, 281 A.2d 596, 600 n.2 (Del. 1971).

[22] *See Smiley v. New Castle Mut. Ins. Co.*, 1992 WL 91162, at *2 (Del. Super. April 20, 1992) ("It is settled law that, in order to have a valid contract for insurance, the insured must have an 'insurable interest' in the property at the time of the loss.").

[23] 18 *Del. C.* § 2706(b).

to the property and had an absolute right to redeem the property. Those interests, individually and collectively, constituted lawful and substantial interests. Chetan Realty's equitable ownership interest in the property, alone, did not divest Mr. Riad of an insurable interest in the property as Liberty Mutual contends. Rather, Mr. Riad and Chetan Realty maintained separate ownership interests in the property during the relevant time frame. In this case, the focus must remain on Mr. Riad's interest when evaluating the important question – that is, what was Mr. Riad's, as opposed to Chetan Realty's, motive to avoid the loss. Both holding title to the property and retaining the right to redeem it provided him sufficient motivation as a matter of law.

9. Second, secondary authority and a significant number of cases form other jurisdictions support this holding. Many jurisdictions have examined this issue—albeit in the analogous context of statutes that permit a homeowner to redeem property after a mortgage foreclosure sale. For instance, *Couch on Insurance* recognizes that "[t]he insurable interest which a mortgagor has at the time a policy is issued continues beyond default . . . *and after the mortgage foreclosure sale and during the redemption period* . . . ."[24] Plaintiff cites a specific and apt example of this premise in *Jackson v. National Security Fire & Casualty Co*.[25] In that case, the Alabama Court of Civil Appeals applied a statute that defines an insurable interest identically to Delaware's provision.[26] There, the Alabama court held that a statutory right to redeem the property after a foreclosure sale provided the original owner a

---

[24] 3 Lee R. Russ et al., *Couch on Insurance* § 42:31 (3d ed. 2005) (emphasis added).

[25] 962 So. 2d 855 (Ala. Civ. App. 2006); *see also* Ala. Code § 27-14-4(b) (defining "insurable interest" identically to Delaware law as any "actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment").

[26] *Jackson*, 962 So. 2d at 859.

6

continued insurable interest in the property throughout.[27]  Many other jurisdictions have held similarly.[28]  Again, there is no logical reason to evaluate the question of insurable interest when examining the right-to-redeem after a monition sale differently than a right-to-redeem after a foreclosure sale.

10.     For its part, Liberty Mutual relies on decisions that are inapposite, such as the Arkansas civil appellate decision in *Marion v. Town & Country Mutual Insurance Company*.[29]   In *Marion*, the former owner contended that his pending appeal of a foreclosure decision preserved his insurable interest even though he did not hold title and had no right to redeem. [30]   In direct contrast, here, (1) Chetan Realty never held title to the property,  (2) Mr. Riad retained title throughout,  and (3) Mr. Riad retained the absolute right to redeem the property at the time of loss.[31] As a result, Mr. Riad retained an insurable interest in the property as a matter of law.

---

[27] *Id.* at 861.

[28] *See e.g.*, *Popular Mortg. Servicing, Inc. v. Ames*, 212 P.3d 495, 498 (Okla. App. Ct. 2009) ("Consequently, where the covered property suffers an insured loss after proceedings to foreclose the mortgagor's interest have been commenced, but before confirmation of the sale and the consequent termination of the mortgagor's right of redemption, the insured mortgagor is entitled to payment of the insurance proceeds, subject to the equitable claim of the secured mortgagee."); *Pattison v. State Farm Fire & Cas. Co.*, 495 P.2d 975, 980 (Kan. 1972) (holding that a mortgagor "has an insurable interest after the foreclosure sale and during the period of redemption, which terminates with the expiration of such right"); *Malvaney v. Yager*, 54 P.2d 135, 138 (Mont. 1936) ("Likewise, the mortgagor may insure his interest without regard to that of the mortgagee, and, if he does so, his protection continues after foreclosure and throughout the period of redemption therefrom."); *Parker v. Iowa Mut. Tornado Ins. Ass'n*, 260 N.W. 844, 849 (Iowa 1935) ("It is our conclusion that the mortgagor's insurable interest does not end until the period of redemption has expired.").

[29] 952 S.W.2d 681 (Ark. Ct. App. 1997).

[30] *Id.* at 682-683.

[31] Notably, Chetan Realty filed a Petition of No Redemption on November 23, 2021, before the expiration of the redemption period. *Joseph Riad and Tax Parcel No. 26-026.40-431*, N21J-04192, D.I. 8; D.I. 17, Ex. E.  For the reasons discussed in footnote 8, it was premature to do so because it assumed confirmation occurred sooner than Rule 69(d) provided.

7

**WHEREFORE,** for the reasons stated above, Defendant's motion for summary judgment is **DENIED.**

<u>Jeffrey J Clark</u>
Resident Judge